CORNELIA RUSSELL

*v.*

THE BAPTIST THEOLOGICAL UNION.

| 73 | 337 |
| 125 | 437 |
| 73 | 337 |
| 62a | 645 |
| 73 | 337 |
| 164 | 122 |
| 73 | 337 |
| 172 | 342 |
| 73 | 337 |
| 182 | 349 |
| 73 | 337 |
| 184 | 537 |
| 73 | 337 |
| 195 | 2619 |
| 196 | 1567 |
| 73 | 337 |
| 103a | 1355 |
| 73 | 337 |
| e202 | 1376 |

1. ACKNOWLEDGMENT—*officer's certificate of, can not be impeached by testimony of party.* It is a rule that the acknowledgment of a deed can not be impeached for anything but fraud, and in such case the evidence must be clear and convincing beyond a reasonable doubt; and whilst the making of a false certificate is a fraud upon the party against whom it is perpetrated, yet the mere evidence of the party purporting to have made the acknowledgment can not overcome the officer's certificate, nor will such evidence, slightly corroborated, overcome it.

2. SERVICE OF PROCESS—*finding by court can not be impeached by evidence of party served.* Where there is a finding by the court that a defendant had been duly served with process, such finding can not be impeached by the evidence of such defendant.

3. Where an indorsement of acknowledgment of service on a writ has the names of a husband and wife signed thereto, in the husband's handwriting, the testimony of the wife that she did not sign it will not be sufficient to overcome a judgment rendered upon it, as the court will presume that the husband was authorized to sign the wife's name, rather than that he committed forgery.

APPEAL from the Circuit Court of Cook county; the Hon. E. S. WILLIAMS, Judge, presiding.

Messrs. ISHAM & LINCOLN, for the appellant.

Messrs. HOLDEN & MOORE, for the appellees.

Mr. CHIEF JUSTICE WALKER delivered the opinion of the Court:

Appellant filed her petition for the allotment of dower in the premises in controversy about the 9th day of June, 1871. It appears that, in June, 1837, J. B. F. Russell, then the husband of appellant, owned the premises, and executed a mortgage on these and other premises to one Elijah K. Hubbard, to secure a number of acceptances given by him; and appellant's name was signed to the mortgage, which is certified by a justice of the peace of Cook county to have been duly acknowledged by both Russell and wife. This mortgage was subsequently foreclosed by a writ of *scire facias*, in the Cook county court, by a judgment rendered on the 29th day of November, 1845. The facts in reference to that foreclosure appear in 41 Ill. 183. By *mesne* conveyances, appellees connect themselves with the sale of the premises under that foreclosure. One of the objections then taken to the judgment was, the want of service to sustain the judgment of foreclosure rendered against this appellant.

There was an indorsement on the writ of *scire facias*, "We hereby acknowledge service of this writ, and pray the court to enter our appearance accordingly." This indorsement had the names of Russell and wife signed to it. The judgment in the case finds that both of the makers of the mortgage had been duly served with process, and, being defaulted, a judgment was rendered and the premises sold, and, not having been redeemed, a deed was made to the purchaser. Russell having died in 1861, appellant sued out a writ of error from this court to the April term, 1866, when, on a hearing, the judgment was affirmed, and those proceedings are set up and relied on as a defense in this case.

Appellant, afterwards, in June, 1871, instituted this proceeding, and appellees, as grounds of defense, insist the claim is stale; that appellant is equitably estopped as well as by the judgment of foreclosure rendered in 1845, and that they have a bar under the statute of 1839, by claim and color of title and seven years' payment of taxes.

The grounds of recovery now assumed by appellant are, that she never signed or acknowledged the mortgage or the acknowledgment of service of the writ, or authorized it to be done by any person for her. She testifies that she was absent from the State from some time in the latter part of the year 1836 until early in 1838, and hence could not have signed or acknowledged the mortgage at or near its date. Several witnesses testify that they remember her absence about that time, and say they do not remember having seen her in Chicago in June, 1837; and witnesses acquainted with the handwriting of Capt. Russell give it as their opinion that both signatures to the mortgage were written by him. Mrs. Campbell says she remembers meeting appellant in Philadelphia in the early part of June of that year, and appellant left there, saying she was going to Alexandria, Virginia, but did not see her afterwards.

This is the evidence upon which it is sought to impeach the execution of the mortgage, and the certificate of acknowledgment made by a justice of the peace, apparently regularly and in the due course of business. When carefully examined, this evidence, aside from that of appellant, is loose, indefinite and unsatisfactory. The witnesses, exclusive of appellant, do not swear positively that appellant was absent at the date of the deed, but say she was East on a visit that summer, and they do not remember having seen her in June of that year. This may all be true, and appellant have been there and directed her husband to sign her name to the mortgage, and have acknowledged it before the justice of the peace; and she may have been in Philadelphia in the early part of June, and yet returned to Chicago by the 20th of that month.

Again, a married woman may, as well as others, execute any instrument by having another sign her name to it, if she adopts it and acknowledges it as her own; hence, if it were conceded that her name was written by her husband, we would presume it done by authority, rather than impute what would be a forgery. A man has no more right to sign his wife's

name to a paper, by which she can be bound and her rights affected, than he has that of any other person.

Then, to decree appellant dower in these premises, we must hold that Capt. Russell and the justice of the peace committed forgery. To so hold we must believe he wrongfully, and to defraud Hubbard, signed his wife's name to the mortgage, and the justice of the peace made a false certificate of her acknowledgment. Before we can find such facts we must have the most clear and satisfactory evidence, whilst here we must hold that the evidence is not of that character. The whole question, as we have seen, depends mainly on the evidence of appellant, the balance of it only slightly tending to corroborate it. All know that it is with great difficulty that even a recent date can be proved satisfactorily from memory alone. It is easily forgotten unless the mind is specially called to and charged with the fact; and the difficulty is greatly enhanced as the date is more remote; and the more remote the date referred to, the less inclined is the mind to receive the statement as absolutely true. Observation teaches, that whilst startling occurrences and unusual events make a strong and indelible impression on the mind, the times of their occurrence soon and readily fade out and can not be accurately recalled.

These events occurred over thirty-four years before the witnesses testified in relation to them, and, doubtless, many events that have occurred long since that time, even of importance, have been entirely effaced from the memory of the witnesses, or if not, they would find it impossible to even fix the year of their occurrence. Nor does the record in this case impress us with the belief that appellant has an unusually retentive memory. In 1866 she sued out a writ of error to reverse the judgment in the foreclosure suit, which, if she had succeeded, would have compelled her to redeem, on equitable terms, before she could have recovered her dower. Now, can any one suppose that she would choose to redeem, if she could recover by impeaching the mortgage and indorsement on the writ? It is strange that she should not then have insisted that her name

had been forged to the mortgage, and the memorandum on the writ, by a proceeding similar to this. Even at that earlier period, it would seem, she did not remember of her visit east. After such a period of time we would not expect one even of a very retentive memory to remember within more than a year or two of a particular date, unless it were associated with some great public or personal event. We are, therefore, less inclined, however truthful the witnesses, to give the weight to such evidence that we would of occurrences of recent date.

It is a rule, that the acknowledgment of a deed can not be impeached for anything but fraud, and in such cases the evidence must be clear and convincing beyond a reasonable doubt; and whilst the making of a false certificate would be a fraud on the party against whom it is perpetrated, there is in favor of the officer the fact that he is under his official oath when he grants the certificate, and the liability to indictment, conviction and infamy is certainly as strong incentive to truthful and honest action, as is the restraint imposed on an interested witness, struggling for the gain following success in a suit, and escaping loss by defeat. Hence, the mere evidence of the party purporting to have made the acknowledgment can not overcome the officer's certificate. Nor will it be with slight corroboration. We have seen, the evidence in this case is insufficient to impeach the certificate of acknowledgment, and it must have given to it all the force and effect it would have had, had it not been assailed.

The stability of titles, and the prosperity of communities, require that land owners should have reasonable security against such claims. Anciently, *femes covert* could only relinquish dower as a matter of record, and that, like all other records, could only be impeached for fraud, and the repose of society requires that the same force should be given to the certificate of an officer authorized to certify such acknowledgments. In this case the property has, undoubtedly, been vastly enhanced by the growth of the city, leaving out of view the costly structures erected upon it, since the death of Capt. Russell. During that time the record has presented what ap-

peared to the world a title free from dower, and on the faith of which this, and perhaps other valuable property similarly situated, has been purchased, and present owners would lose large sums, if the claim were allowed, that they would have saved had appellant made her claim more promptly. This is not referred to as controlling the case, but to show that it would operate harshly on present owners if her claim were allowed, and that the greater part, if not all of the hardship, would be occasioned by her long delay.

It is also insisted, that the indorsement on the writ is shown to be in the handwriting of the husband of appellant. Conceding this to be true, it does not follow that the court failed to acquire jurisdiction over her to bar her rights, as we have seen that, if she authorized her husband to sign her name, that would bind her; and such would be the presumption, rather than that her husband had committed the crime of forgery. She says she thinks she was absent when the indorsement was made. She believes she was then in Newport, Rhode Island. Her evidence on this question is not definite or positive, and is of little value. Be it as it may, the court found that she was duly served, and that is so far conclusive that it can not be impeached by her evidence. It was held in the case in 41 Ill. 183, to which she was a party, that the finding of the court was sufficient, and that decision is binding upon parties and privies. This question of service was there decided on the case of *Banks* v. *Banks*, 31 Ill. 162, which holds such service to be sufficient to confer jurisdiction. The presumption would be, in such a case, that the court heard evidence of the execution of the instrument entering an appearance. Suppose appellant and her husband had executed such an instrument, or a similar instrument, purporting to have been executed by them, and the paper had been filed and the court had heard evidence of its execution and proceeded to judgment, could any one suppose that such a judgment, after the term, could be impeached on her affidavit that she had not signed the paper, and did not know the suit had been com-

menced? Surely not, under the long and well established practice of all courts.

If such a practice were to prevail, a defendant, or, for that matter, a plaintiff also, could destroy the effect of a judgment, by alleging that they had not signed any of the pleadings in a case, and did not know of the pendency of a suit. The solemn judgment and finding of a court can not be so easily destroyed. It is of a more enduring nature, and more conclusive effect. Here, there was a finding of the court which has not been impeached, and which concludes appellant's claim to dower in the premises. This view of the case renders the consideration of the other questions presented by appellee's counsel unimportant in the decision of the case, and we shall refrain from their discussion.

Perceiving no error in the record, the decree of the court below must be affirmed.

*Decree affirmed.*