JAMES C. JOHNSON v. LEON D. VAN VELSOR, BY HIS GUARDIAN AD LITEM, AND ELIZA A. VAN VELSOR, PRESTON HART AND SAMUEL BRANDT.

*Foreclosure of entire mortgage for overdue instalment—Homestead and dower barred—Proof of allegation in cross-bill—Certificates of acknowledgment.*

Where a wife has joined with her husband in an absolute deed of property which her husband had already mortgaged, a subsequent purchase of the property by her cannot revive her original rights so as to enable her, in resisting foreclosure of the mortgage, to claim homestead and dower in the lands.

Parol evidence that a deed *prima facie* absolute was only meant as a mortgage, must be explicit; mere general declarations to that effect by a party claiming the benefit of such a construction are not enough.

An order *pro confesso* is practically waived in so far as it might estop the defendant from maintaining a cross-bill, if the cross-bill is really filed and both cases are argued together and treated as a single litigation.

*It seems* that formal notice of an election to foreclose for the whole debt, if an instalment is overdue, is unnecessary, and a declaration in the bill, of such an election, is enough.

Foreclosure decree is given for everything due when it is granted, though suit was begun when only an instalment of the debt had matured.

Where a foreclosure case is tried on a bill and cross-bill, and the defendant, on information and belief, alleges in the cross-bill that the amount called for in the original bill is too much, it is for the defense to prove the allegation if opportunity is given. If no proof is offered, the complainant is not obliged to tender evidence to disprove it.

A signature to a mortgage is binding if made at the proper time and duly acknowledged, whether signed by the person owning the name, or by some one else with his consent.

Certificates of acknowledgment may be impugned by proof of fraud or duress, but not by a mere denial of the facts certified, made on oath by the party purporting to make the acknowledgment and opposed by equally strong evidence in support of such certificate.

Appeal from Barry. Submitted Jan. 16. Decided April 8.

FORECLOSURE. Bill and cross-bill. Complainant appeals.

*L. E. & C. M. Knappen* for complainants. It is unimportant whether a party to an instrument actually signs it if he assents to its being signed for him and acknowledges the signature, *Kerr v. Russell* 69 Ill. 666; *Tunison v. Chamblin* 88 Ill. 389; the mere testimony of a party who purports to have acknowledged an instrument cannot overcome the certificate of acknowledgment, *Russell v. Baptist Theol. Union* 73 Ill. 337; *Lickmon v. Harding* 65 Ill. 505; a wife who seeks to avoid a mortgage on her homestead on the ground that she never knowingly signed it, must make out a clear case, *Heeter v. Glasgow* 79 Penn. St. 83; *Jourdan v. Jourdan* 9 S. & R. 268; *Graham v. Anderson* 42 Ill. 518; *Monroe v. Poorman* 62 Ill. 523; *Jamison v. Jamison* 3 Whart. 457.

*C. G. Holbrook* and *James Clark* for defendants.

GRAVES, J.   This is a litigation by bill and cross-bill growing out of a mortgage transaction.   Some explanation from the record is necessary.   May 6, 1871, one John R. Van Velsor mortgaged to Johnson city lots 1, 2, 3, 4 and 5 of Grant's addition in Hastings and forty acres of section 27 in Irving and thirty acres of section 8 in Castleton, all in Barry county, for an expressed consideration of $1500.   The mortgage was accompanied by Van Velsor's bond.   By the terms of the papers, which bore date May 5th, the principal was to be paid in five years, with interest at ten per cent, payable semi-annually, and all payments were required to be made at the First National Bank of Marshall, with current rates of exchange on New York.   Both bond and mortgage contained the common interest clause giving the mortgagee an option to consider the whole due in case of a continuing default for thirty days, and the mortgage further contained what is called the insurance clause and the clause in regard to taxes, and there was also a provision for an attorney's fee of $50.

The mortgage purported to be executed by Mrs. Van Velsor, the wife of the mortgagor, and was signed by James Cloes and H. W. Rolfe as attesting witnesses, and its execution by both Van Velsor and wife was authenticated by the formal certificate of acknowledgment made by Rolfe as notary public.   The instrument was recorded May 6, 1871.   January, 1874, Van Velsor died, leaving Eliza A. Van Velsor, his widow, and two infant children, Leon D., of the age of about six years, and Wendell P., of about two years.   From a time prior to the mortgage the city lots have been occupied together, and until his death Van Velsor so occupied them with his family as his homestead, and since that event his widow has continued the homestead occupation.   The dwelling and other buildings appear to stand on the line between lots one and two.

July 18, 1874, Johnson filed the original bill to fore-close the mortgage, and he charged, among other things, that a considerable amount of interest had accrued and fallen due, and had remained due and unpaid for more than thirty days, and that pursuant to the provisions of the mortgage he elected to consider the whole amount due and payable, and so declared. Mrs. Van Velsor and her two children were made defendants, and one Preston Hart and Samuel Brandt were joined as subsequent pur-chasers or encumbrancers. There were no representatives of the estate.

December 28, 1874, the infants by their guardian *ad litem* answered the bill. They alleged on information and belief that the expressed consideration in the bond and mortgage, in so much as it exceeded $1000, was false and usurious. They further claimed that there had been no valid election to cause the whole amount to be immediately due and payable, and that not to exceed $150 was actually due. They also set up, as I think, in substance, that the city lots were exempt. About the time of this answer the infant Wendell P. died, and some time later his death was suggested and an order to revive was entered. Mrs. Van Velsor abstained from answering, and December 2, 1876, the bill was taken as confessed by her. March 5, 1877, she filed her petition to vacate the order *pro confesso* and for leave to answer, but the petition appears to have been allowed to drop. There is no evidence of any attempt to have it heard, and there is nothing to show that its existence was ever actually made known to the court.

March 10, 1877, the surviving infant, by his guardian *ad litem*, united with Mrs. Van Velsor in a cross-bill, but making no one defendant except the complainant in the original bill. October 14, 1878, he answered, and the cross cause was put at issue.

This bill set up that the the two complainants therein were *equitable owners* and *actual* occupants of the mort-

gaged premises; that Van Velsor at his death occupied the city lots as a homestead, and that his wife and family have occupied it since in the same way; that he died intestate, and she thereupon as his widow became tenant in dower in the mortgaged premises, and the children became seized of the fee-simple as his heirs-at-law, and that by the subsequent decease of the younger his interest had passed to his brother, the surviving infant. Mrs. Van Velsor then denies having joined in the mortgage, and avers that she never signed it or acknowledged it. She insists upon a right of homestead during the minority of the remaining child, and full right of dower in all the premises. The cross-bill has some grave formal defects at least, but it is not important to dwell upon them.

March 24, 1879, an interlocutory decree was made, finding the whole amount due and specifying the same, and allowing Mrs. Van Velsor to select a homestead on the parcel embracing the city lots, and requiring payment of the mortgage debt within a time given, and in case of default referring it to a commissioner to inquire into the value of the premises and their situation in regard to deeds and encumbrances later than the mortgage, and to take necessary proofs and report the same with his opinion.

May 10, 1879, the commissioner made his report, from which it appeared that Mrs. Van Velsor had selected her homestead, and it further appeared that on October 5, 1872, she had joined with her husband, the mortgagor, in an absolute deed of the entire mortgaged premises to one Samuel Brandt; that Brandt and wife had deeded absolutely, on the 10th of August, 1875, to one William Becker; and that Becker and wife had recently, and on the 22d of October, 1877, deeded in the same way to Mrs. Van Velsor. It also appeared that she swore before the commissioner that the deed to Brandt was given simply as security, and that the conveyance to herself from Becker was brought about by means of a suit in

chancery, instituted by herself and child, to recover the property. The proceedings in that case do not appear, and there is nothing else to show that the deed to Brandt did not pass the equity of redemption. The commissioner expressed no opinion about it.

June 17, 1879, the court allowed a rehearing on the application of Johnson, and afterwards, and on the 22d of November, 1879, made a final decree. It confirmed the report of May 10th, and sanctioned Mrs. Van Velsor's claim and selection of homestead, and her claim of dower. It also allowed the whole mortgage debt except small items of interest which had been credited, and provided for a sale of the unexcepted interests. It is too long to be noticed in detail. No attempt was made to distinguish between the original and cross causes. The complainant Johnson appealed. The other parties acquiesced.

There is room for argument on this record that the absolute conveyance to Brandt put an end to the legal title in Van Velsor, and extinguished whatever groundwork of title there may have been for a right of homestead or of dower against the mortgage. It is not to be assumed that there is anything here which ascertains and settles that the transaction with Brandt was a mere mortgage, and that accordingly there remained an equity, which can be made available in this litigation to support a right of homestead or of dower against the mortgage.

Granting that the deed to Brandt was, as it appears, an absolute conveyance, and it follows that the old estate was entirely divested, and Becker's deed to Mrs. Van Velsor, during the suit, did not operate by relation to the time of the deed to Brandt, and do away with the intervening want of title.

The legal connection with the ownership, and all right of homestead incident to ownership, was severed and gone, and the effect of the deed from Becker was to institute a new ownership and confer it on Mrs. Van Velsor. It did not revive and restore any former right

of homestead. Mrs. Van Velsor became and remains a holder, not as the widow of John R. Van Velsor, nor as proprietor of a homestead right incident to any title which was in him at his death, but simply as grantee of Becker.

Wherever the controversy allows a party to control by parol evidence the operation of an instrument which is made and held out as an absolute conveyance, and to show the transaction to have been only a mortgage, the court will require the proof to be clear and convincing, and will not be satisfied with mere general declarations by the party setting up the claim. *Thornbrough v. Baker: Howard v. Harris* and notes, 2 Lead. Cas. in Equity, [part 2] pp. 741, 752; *Campbell v. Dearborn* 109 Mass. 130

The showing in this record is exceedingly meagre. But as the case was not argued on this theory, and it may be disposed of consistently on another ground, the subject will not be discussed. The practice in the case has not been neat and accurate, and the printed record is not well prepared. But no defects are noticed of sufficient moment to prevent the court from entertaining the cause of action, or from considering the defense. The circumstance that the original bill was taken as confessed by Mrs. Van Velsor is of no special importance. The parties did not permit it to affect their dealing with the merits. They proceeded in the cross cause, and mutually produced such evidence as they chose relative to every part of the controversy. They argued both cases together, and in fact jumbled them into a single contention. The course pursued was tantamount to a waiver of the order *pro confesso*, in so far as it might have operated, by way of admission or estoppel, in relation to the cross cause.

The objection that only a small amount had accrued on the mortgage at the time of the filing of the bill, and that no notice of an election had been given to consider the whole debt as due, is of no practical importance. According to the weight of authority a declaration in the

bill itself is sufficient, and formal notice of an election prior to the suit is unnecessary, and as we have seen, the bill contained an explicit declaration. But there is no occasion to rule expressly on this question now. There was an amount due and in arrear, and the court had jurisdiction, and three years before the decree was pronounced, the whole mortgage debt had matured and become payable, and every part was subject to the same fate. It is only necessary to add that the practice is finally settled "of giving a decree for everything due at the time it is granted." *Vaughn v. Nims* 36 Mich. 297.

A claim is set up that the mortgage debt is not satisfactorily established as against the infant defendant. When the cause and its details are considered, this position is not very intelligible. Although equity extends, according to its own methods, a watchful care over the rights and interests of infants, and will generally put aside all admissions, either actual or constructive, made in their name or on their behalf, still the substantial rules and principles of evidence are never subverted in their favor. They remain and operate with as much force against infants as against adults. A different theory would pervert the end to be accomplished. It would lead towards the suspension of remedies against infants, and instead of favoring their good would tend to debar them from manifold benefits essential to their well-being and advantage.

In the present case there was a reference and proceedings according to Chancery Rule 92. The bond and mortgage were produced, and there was evidence of their execution by Van Velsor, the infant's father, and no evidence to the contrary; and in making proof in the cross cause there was direct and positive evidence on the subject. Mrs. Van Velsor herself swore that her husband executed the mortgage. On proof of the securities they became evidence of the amount, and there was no evidence to reduce it except the undisputed receipts, which were allowed.

It was set up on information and belief, as we have seen, that the papers called for too much. If this allegation was true it was for the defense to show it, and opportunity was given to inquire into it. The gentleman who negotiated the loan on complainant's part, and knew all the facts as to the true consideration, was several times on the stand; but there was no offer to prove the charge, and certainly it was not incumbent on the complainant to tender evidence to disprove it so long as no attempt was intimated to sustain it.

We come now to the main contention. The right to homestead and the right to dower depend on whether Mrs. Van Velsor is bound by the mortgage. If she is, then of course those rights are cut off, and complainant ought to have a decree for foreclosure and sale without reference to them.

There is no basis for imputing anything unfair or inequitable to complainant. So far as appears, the transaction was an honest one on his part. He seems to have advanced his money to Van Velsor in perfect good faith, and in the full and reasonable belief that the mortgage was well executed to conclude Mrs. Van Velsor and cut off all homestead and dower rights; and if the fact was otherwise, and the mortgage was not so given, there is no ground for ascribing any fault to him. It was of some consequence to complainant that the mortgage should be so executed. A fair deduction for dower and homestead might reduce the security much below what would be adequate. The mortgage bore Mrs. Van Velsor's name, and with it a formal certificate by a competent officer of her acknowledgment of execution. She swears, however, as we have noticed, that she never signed the instrument, or authorized any one to sign it for her, and never acknowledged its execution.

A number of witnesses have testified as experts, but their evidence is just as consistent with a theory that it was executed in a way to bind her as the contrary, and

it may be wholly laid aside.    An examination and comparison of the whole of this testimony show that neither side is aided by it.    The position that her name appearing on the mortgage was not written by her rests almost entirely upon her own testimony.    But, on the other hand, what there is to prove the affirmative and establish that she wrote it, is far from being strong evidence. So much depends on circumspection and on fidelity of memory, as well as on candor and veracity, that the appearance of faults in either respect must unavoidably tend to shake confidence, and detract in a greater or less degree from the credit of the witness to whom they are traced.    And in case the interests and influences are such as may create a strong personal bias and excite a disposition to see and report matters as they are wished for rather than as they are, and the result is likely to depend much, if not mainly, on the testimony of the particular witness, the appearance of such obstacles to credence may necessitate considerable eliminations.

We pass from these observations to remark that the record shows discrepancies which, as they concern the adequacy of the testimony given by the chief defendant and witness to establish the facts deposed to, it is impossible to overlook.    No intent to deviate from truth is imputed, but the want of attention to accuracy, or the want of memory, or both, is so manifest that the mind cannot be brought to rely on the material representations made, where there is a lack of corroboration, and where moreover there exists opposing evidence which is reasonable in itself and is derived from a credible source.

Her petition to vacate the order *pro confesso* and for leave to answer was filed, as we have seen, by Mrs. Van Velsor in March; and yet only three days after she had sworn to that petition she set up in her sworn cross-bill that she had not only obtained leave to answer but had answered and fully denied all the equity of the original bill.    This was entirely untrue, and her counsel substantially admits it in her brief, and so far as concerns ex-

planation the case is dumb. On the first occasion of her testifying in open court she swore positively that she recognized her husband's signature to the mortgage, but that she had not the least knowledge who made the other. This testimony was given sometime in 1879. The time is not specified in the record. Now two years earlier she alleged in her sworn petition, just mentioned, that "she *believes* that the same (the signature of her name on the mortgage) is in the handwriting of her said husband;" and further "that she has felt reluctant to interpose such defense against said mortgage, solely on account of the imputation that it might cast upon the memory of her said husband and on account of the surviving children, and to avoid doing so she has earnestly endeavored to compromise the matter." On being recalled to the stand some time after her first examination in open court, she gave evidence that her husband was expert in imitating signatures, and had experimented in her presence, and that he could so well counterfeit her writing as "to fool her on it when he tried to." No one can read these statements with the context and mistake the drift. They are not consistent, and the case contains nothing to modify the disparaging effect. An extension of the analysis to every part of the record would be a waste of time.

The case does not exclude argument that Mrs. Van Velsor's name was written by her own hand, but it is unnecessary to investigate that question, because there is another view which is more acceptable. So far as the effect is concerned, it is of no importance whether she held the pen or whether her husband held it, and certainly it was held by one or the other. If the act of penning her name had her free and complete assent, or her free and complete acceptance, the signature is her signature in substance and effect. And it is fully proved that her name was affixed at the proper time, and the weight of evidence is in favor of the truth of the certificate of her acknowledgment of having executed the mort-

gage, and against her denial. And if she freely and fully acknowledged the mortgage so signed, to be her free act and deed, as the certificate imports, then whether the physical act of writing was performed by herself or her husband, the signature was completely accepted as her own, and it has the force of her signature.

The authorities are in general very decided in ascribing weight to certificates of acknowledgment, and in disallowing attempts to impugn them. *Kerr v. Russell* 69 Ill. 666; *Heeter v. Glasgow* 79 Penn. St. 79; *Singer Manfg. Co. v. Rook* 84 id. 442; *Johnston v. Wallace* 53 Miss. 331; *Hartley. v. Frosh* 6 Tex. 208; *Baldwin v. Snowden* 11 Ohio St. 203; *Bissett v. Bissett* 1 Har. & McH. 211; *Ridgely v. Howard* 3 id. 321; *Moore v. Fuller* 6 Oregon 272; *Thurman v. Cameron* 24 Wend. 87; 1 Jones on Mortgages (2d ed.) § 538 and cases.

Of course they may be overthrown by cogent proof of fraud or duress. All the cases so hold. But it has never been supposed that the bare oath of the party, in contradiction of the facts certified, would be sufficient, and we have nothing more against this certificate, of any substance than the oath of Mrs. Van Velsor, and the oath of the notary on the stand is oppposed to her oath. If it be objected that he has a strong motive to support his official certificate, the reply is that she must have an equally strong, if not stronger, to defeat or impeach it. In *Hourtienne v. Schnoor* a married woman filed a bill to avoid a mortgage given on the homestead by her husband, on the ground that she never knowingly signed or acknowledged it, and we held that "all presumptions in cases of this kind must be treated with reasonable respect to the improbability of misconduct in a reputable officer, or of forgery which he ought to have discovered if it existed; and [that] the burden of proof was on complainant to make out a plain case." 33 Mich. 274; and see *Matter of Wool* 36 Mich. 299.

The rule stated in the first of these cases is strictly pertinent, and some of the observations in the last one,

and especially those in regard to explanations by an acknowledging officer on the stand as to precisely what occurred on a particular occasion, are quite apposite to the testimony of the notary here.   In some particulars he was not fluent or lucid, but there is nothing to convict him of being a falsifier.   He had been a student with Van Velsor, and seems to have been his friend and to have remained a friend of the family.   He swore positively that he recollected that Van Velsor gave him the mortgage, and told him to go and get Mrs. Van Velsor's acknowledgment; that he went to the house and told her what his business was, and that she acknowledged to him that she had executed the instrument.   He also swore that he supposed the legal forms were gone through with.

The result is that the decree below must be reversed, and one entered here allowing foreclosure and sale; and defendants will be given until the 8th day of July next next in which to pay the mortgage debt, being $2332.53, with interest at the rate of ten per cent from December 12, 1876, the date of the report, together with the costs; and complainant will recover his costs of both courts.

The other Justices concurred.