## LYDA GRITTEN

*v.*

## ELIZABETH DICKERSON.

*Opinion filed April 24, 1903.*

1. DEEDS—*clear proof is required to impeach notary's certificate.* To overcome a notary's certificate of acknowledgment of a deed the proof must be clear and satisfactory and be given by disinterested witnesses, and it is not sufficient that the grantor denies the truth of the certificate, though his testimony is slightly corroborated.

2. SAME—*what does not overcome notary's certificate.* A notary's certificate as to the execution of a deed by a mark is not overcome by proof that the alleged grantor could write her name, where the evidence shows that she often made her mark instead of writing her name, and three witnesses testify that they saw her make her mark upon the deed in question.

3. DOWER—*dower does not attach to land held in trust.* Dower does not attach to land conveyed to the husband for the purpose of conveying the title to his grantor's wife, even though he held title for some two months, where he never had possession or exercised any acts of ownership over the property, which remained in the possession and control of the original grantor.

*Dickerson* v. *Gritten,* 103 Ill. App. 351, affirmed.

APPEAL from the Appellate Court for the Third District;—heard in that court on appeal from the Circuit Court of Douglas county; the Hon. W. G. COCHRAN, Judge, presiding.

This is a bill, filed in the circuit court of Champaign county by the appellant, Lyda Gritten, against the appellee, Elizabeth Dickerson, praying for the cancellation of a deed, alleged to have been executed February 11, 1889, by Laban Gritten and his wife, the appellant Lyda Gritten, conveying to the appellee, Elizabeth Dickerson, six hundred and forty acres, being a section of land in that county, and for a decree that appellant had an inchoate right of dower in the land. The bill charged that Laban Gritten was the owner in fee of the premises in question, and that the said deed, which purported to be signed by Laban Gritten and Lyda Gritten, his wife, by

their respective marks, and to have been acknowledged by them on February 11, 1889, before one David Craw-ford, a notary public of Champaign, was not signed by the appellant, and that appellant not only did not sign the same or authorize her signature thereto, but had no knowledge of the existence of such deed until about the month of May, 1894; and that the said deed is a forgery.

An answer was filed by the present appellee, de-fendant below, denying that Laban Gritten was ever the owner of the land. Appellee set up in her answer that a deed was made by Ezra Dickerson, her husband, to Laban Gritten, under the advice of the said Crawford, for the purpose of having a conveyance made to Eliza-beth Dickerson, appellee, Crawford advising that Ezra Dickerson could not make the conveyance to his wife, the appellee, but that it was necessary to make the same to a third person, and have the latter execute the convey-ance. The amended answer also sets up that appellant knew the reason for making such deed, and voluntarily joined in the execution of the deed of February 11, 1889.

The cause was referred to a master in chancery to take the evidence and report his conclusions of law and fact. The master found that the deed was not executed by appellant, but that the land was conveyed by Ezra Dickerson to Laban Gritten for the purpose of having Laban Gritten convey the same to Dickerson's wife, the appellee; that such conveyance was accepted by him for that purpose and was acted upon by him accordingly; that no consideration ever passed from or to the said Laban Gritten, and that the latter was never in posses-sion of the land under the deed, and was never seized of an indefeasible estate of inheritance in the premises, and that appellant was not, and could not be, invested with an inchoate right of dower.

The case came on for hearing upon exceptions to the master's report. Appellant filed objections to all the master's findings, except the finding that she did not ex-

ecute the deed in question, and except the finding as to the impeachment of the notary public, Crawford. Appellee also filed exceptions to the finding of the master to the effect that appellant did not execute the deed. Upon the hearing the circuit court sustained the exceptions of appellant and overruled those of appellee, and found that the deed was not the deed of appellant, and that she had an inchoate right of dower in the premises, and decreed that the deed should be delivered up to be canceled.

An appeal was taken to the Appellate Court for the Third District, and the Appellate Court rendered judgment, reversing the decree of the circuit court, and remanding the cause with directions to the circuit court to dismiss the bill. The present appeal is prosecuted from the judgment so entered by the Appellate Court.

O. M. JONES, for appellant.

JOHN J. REA, for appellee.

Mr. CHIEF JUSTICE MAGRUDER delivered the opinion of the court:

On November 28, 1888, Ezra Dickerson and his wife, Elizabeth Dickerson, executed a deed, conveying the six hundred and forty acres of land here in controversy to Laban Gritten, the husband of the appellant. Laban Gritten held the title to the property for a little more than two months, and on February 11, 1889, the records show a deed, purporting to have been executed by Laban Gritten and the appellant, Lyda Gritten, his wife, conveying back the six hundred and forty acres, not to Ezra Dickerson, but to the appellee, Elizabeth Dickerson, Ezra Dickerson's wife. The contention of the appellant is, that the land was owned by her husband, Laban Gritten, and that, when he made the deed to the appellee, she, the appellant, never signed the deed, or joined him in the execution of it, and that, therefore, she has an inchoate right of dower in the premises. In other words, the claim

of the appellant is that, so far as she is concerned, the deed was a forgery. The defense, set up by the present appellee in her amended answer to the bill in the court below, and which is here insisted upon, is two-fold in its character, and is, first, that the deed was signed by the appellant and acknowledged by her before Crawford, the notary; and, second, that, whether she signed the deed or not, her husband, Laban Gritten, never had any interest in the property as owner, and was never seized of an indefeasible estate of inheritance therein, and that, for that reason, his wife, the appellant, never had and does not now have any right of dower in the premises.

*First*—The deed, dated February 11, 1889, above referred to, was not produced in evidence, but had been lost or destroyed. Only a certified copy of the record of the same was produced in evidence. The record shows that the deed was signed by Laban Gritten by his mark, and also by Lyda Gritten by her mark, and that the deed was witnessed or attested by A. M. Clark. The record also shows that the deed was regularly acknowledged by Laban Gritten and Lyda Gritten, his wife, before a notary public by the name of David Crawford; and the certificate of acknowledgment is in all respects regular and in accordance with the provisions of the statute. It is conceded on all hands, that the original deed was executed by Laban Gritten, appellant's husband.

The evidence shows quite clearly why the original deed was not produced. After its execution it was taken possession of by Ezra Dickerson and delivered by him to his wife, the appellee. Ezra Dickerson then delivered the deed to a justice of the peace by the name of C. E. Ellis, who seems to have been an adviser of Dickerson and his wife. Ellis recorded the deed, and it is expressly admitted by both parties that, after the deed was recorded, it was delivered by the recorder to Ellis at Gifford, where he lived. It is also shown by the testimony that a fire occurred in Gifford, which destroyed all or

nearly all of the town, and burned up many of the papers of Ellis. He swears that he searched for the deed, and was unable to find it, and that, if he had it, it was burned in the fire which took place in 1894.

The certificate of the notary, that the deed was duly acknowledged by the appellant is such evidence of its execution as cannot be overcome by the testimony alone of the appellant, one of the grantors in the deed. This court has held that the uncorroborated testimony of the grantor, or party executing a deed, is not sufficient to overcome the evidence afforded by the officer's certificate of acknowledgment. Clear and satisfactory proof is required to impeach a certificate of the acknowledgment of a deed. It is not sufficient that the testimony of a grantor as to the non-execution of the deed should be slightly corroborated. The proof, to sustain the charge that such certificate of acknowledgment is untrue and fraudulent, "must be of the clearest, strongest and most convincing character, and be by disinterested witnesses." (*Sassenberg* v. *Huseman*, 182 Ill. 341, and cases there referred to; *Oliphant* v. *Liversidge*, 142 id. 160, and cases there referred to; *Davis* v. *Howard*, 172 id. 340). In *Russell* v. *Baptist Theological Union*, 73 Ill. 337, we said (p. 341): "It is a rule that the acknowledgment of a deed cannot be impeached for anything but fraud, and, in such cases, the evidence must be clear and convincing beyond a reasonable doubt; and, whilst the making of a false certificate would be a fraud on the party against whom it is perpetrated, there is in favor of the officer the fact that he is under his official oath when he grants the certificate, and the liability to indictment, conviction and infamy is certainly as strong incentive to truthful and honest action, as is the restraint imposed on an interested witness, struggling for the gain following success in a suit, and escaping loss by defeat. Hence, the mere evidence of the party purporting to have made the acknowledgment cannot overcome the officer's certificate. Nor will it be with slight corroboration."

In the case at bar, three witnesses, Laban Gritten, Ezra Dickerson, and William Heinz swear that they were present in the office of the notary, Crawford, when the appellant and her husband signed and acknowledged the deed. Since the execution of the deed the notary, Crawford, has died, and, of course, there is no evidence coming from him as to what occurred. The three witnesses above named swear that Crawford, the notary, signed the name of Laban Gritten, and that the latter made his mark; that then, the notary requested appellant to sign her name, whereupon she stated that she wrote very poorly, and preferred that the notary should sign her name, and that she would make her mark. These three witnesses swear that they saw her make her mark. Heinz appears to be a perfectly disinterested witness, and his evidence seems to be clear and fair. Over against the certificate of the notary, and the testimony of these three witnesses, is the testimony of the appellant, and certain facts and circumstances relied upon by the appellant. One of these facts is, that the appellant could write her name, and, therefore, it was not necessary for her to make her mark. But there is evidence in the record going to show that, in view of the fact that she wrote with difficulty, and a poor hand, she often made her mark instead of signing her name. At any rate, the proof is quite positive that she made her mark upon this occasion. A large mass of testimony was introduced as to the character of the deceased notary, who took the acknowledgment. Witnesses were produced, who swore that his reputation for truth and veracity was bad, but none of them say that they would not believe him under oath. We pass no opinion upon the question, whether the truthfulness of a notary's certificate of acknowledgment can be impeached by testimony as to his truth and veracity. It is sufficient to say that, in this case, there is as much evidence to the effect that his reputation in this regard was good, as that it was bad. It quite conclusively ap-

pears that much of the unfavorable opinion, which was
entertained of the notary in the community where he
lived, arose from the fact that he was not only a notary,
but a lawyer, and a constable, and an active and ener-
getic collector of debts.    Many persons, against whom
he prosecuted claims for collection, were hostile to him
because of what they conceived to be his persecution.
Another alleged fact relied upon is that Laban Gritten
admitted, either in conversation or in his testimony as a
witness in litigation which he had with his wife, that she
knew nothing about the execution of the deed.   He denies,
however, that he made any such admission.   At the time
when this deed was executed, to-wit, on February 11,
1889, Laban Gritten and the appellant were living to-
gether as man and wife, and, so far as the record shows,
no difficulty then existed between them.    Subsequently,
however, in 1893, or thereabouts, divorce proceedings
were instituted by appellant against her husband, and
she obtained a divorce against him for his fault.    The
charge, that the deed was a forgery, was not made until
after the litigation, resulting in divorce, began between
herself and her husband.    We are not able to say, after
a careful examination of all the testimony, that there is
any clear, cogent or satisfactory proof, impeaching the
certificate of acknowledgment certifying that this deed
was acknowledged by the appellant.    On the contrary,
the weight of the oral testimony, taken in connection
with the certificate itself, sustains the truthfulness of
the certificate.    It has been said that "the evidence, to
impeach the certificate, must be clear and convincing
beyond a reasonable doubt.   It should do more than
produce a mere preponderance against the integrity
of the certificate in the balancing of probabilities.    It
should, by its completeness and reliable character, fully
and clearly satisfy the court that the certificate is untrue
and fraudulent."   (1 Am. & Eng. Ency. of Law,—2d ed.—
pp. 560, 561; *Marston* v. *Brittenham,* 76 Ill. 611; *McPherson*

v. *Sanborn*, 88 id. 150; *Griffin* v. *Griffin*, 125 id. 430; *Strauch* v. *Hathaway*, 101 id. 11).

*Second*—Upon the other question, the proof is clear and convincing that Laban Gritten never really owned this land. It was conveyed to him by Dickerson and his wife merely that he might convey it back to Mrs. Dickerson. Dickerson did not make the deed directly to his wife, the appellee, because he was advised that it was necessary to make the conveyance to some third person, and that that third person should deed it to his wife. Gritten, after the deed was executed, only held the title for a short time longer than two months, and he states that it was not conveyed back to Mrs. Dickerson sooner, partly through neglect on his part, and partly because Crawford, the notary, thought it was best for him to hold the title for a while. It is clearly proven that Gritten never took possession of the property; that Dickerson retained the possession of it, and lived upon it, and rented it out to other parties. A son of appellant states that he himself rented a part of the land from Ezra Dickerson after the conveyance was made to Laban Gritten, and paid the rent to Dickerson, and not to his father, Laban Gritten. The acts of ownership on the part of Laban Gritten, sought to be established by the appellant, are of a vague and uncertain character, and there is evidence in the record, explaining such acts in such a way as to make them consistent with the contention that Laban Gritten was not the real owner of the land. After the deed was made, all the rents and profits were received by Mrs. Dickerson, or her husband, and not by Laban Gritten.

It thus appears that, while Laban Gritten held the title, he held it merely in trust for the purpose of transferring it to the appellee. It is well settled that, where a person holds land in trust for another, the wife of the trustee is not entitled to dower in the same. (*Bailey* v. *West*, 41 Ill. 290; *King* v. *Bushnell*, 121 id. 656).

We are of the opinion, in view of what has been said, that the appellant had no standing in a court of equity, in the light of either of the defenses set up by the appellee, and that, therefore, her bill should have been dismissed by the trial court.

Accordingly, the judgment of the Appellate Court is affirmed.

*Judgment affirmed.*