## Bowes Investment Company, Appellee, v. Paul Steinlauf and Gizella Steinlauf, Appellants.

### Gen. No. 17,441.

1. DEEDS—*effect of acknowledgment.* Where a deed purports to be duly acknowledged under the hand and seal of an officer legally authorized to take the acknowledgment and certify thereto, the effect of the certificate as to the due execution cannot be overcome by uncorroborated evidence of the grantor, but such evidence must be supported by clear and conclusive proof which excludes all reasonable doubts.

2. DEEDS—*what evidence insufficient to show forgery.* A decree finding that a release deed which was duly acknowledged before a proper officer and purported to be signed by the owner of a note secured by the trust deed released, was a forgery, is not sustained where the only evidence as to the forgery was that of the grantor corroborated only by the fact that he had possession of the trust deed, which had never been canceled, but the release deed did not purport to release all the property described in the trust deed nor all the debt secured thereby.

3. MORTGAGES—*credit on mortgage debt when part of property released therefrom.* Where four-fifths of property described in a trust deed is released by the owner of the note without reduction of the indebtedness and with knowledge that there have been successive conveyances of parts of such premises and the one-fifth remaining is scant security for the debt, a purchaser of such one-fifth is entitled to credit on the mortgage debt of a sum equal to the value of the property released.

Appeal from the Circuit Court of Cook county; the HON. RICHARD S. TUTHILL, Judge, presiding. Heard in the Branch Appellate Court at the March term, 1911. Reversed and remanded. Opinion filed November 29, 1912.

DETLENBACK, RIESE & CODY, for appellants; KRAUS, ALSCHULER & HOLDEN, of counsel.

MATHER & HUTSON, for appellee.

MR. JUSTICE FITCH delivered the opinion of the court.

This is an appeal from a decree in a forceclosure suit. The defense in the court below was that the trust

deed upon which the suit was based had been released as to the property of appellants by a deed executed by the trustee, duly acknowledged and recorded. The chancellor found in favor of appellee (the complainant) and entered a decree accordingly. On this appeal, the main points urged are that the findings and decree are not sustained by sufficient evidence, and that the decree is otherwise inequitable and unjust.

It appears from the evidence that in October, 1900, one George W. Dawes executed his promissory note for $2,000, payable to his own order and by him endorsed in blank, due two years after the date thereof, with interest at six per cent., and to secure the same executed and delivered a trust deed conveying four lots in Chicago to Edwin J. Bowes, Jr., as trustee. Appellee is an Illinois corporation, and said Bowes was its president. Appellee became the owner of the note above mentioned and said Bowes and his brother became the owners of the four lots, subject to said incumbrance. In March, 1901, the lots were transferred, without any cash payment, to Nathaniel Beardsley, who re-subdivided the four lots into five, and built a house on each of the re-subdivided lots. For this purpose, appellee loaned to Beardsley $2,800 each on four of the lots, and $3,000 on the fifth, for which he gave his notes, payable five years after date, and secured the same by trust deeds on the respective lots. Appellee sold these notes to its customers. The $3,000 note, secured by trust deed on lot 5 of Beardsley's re-subdivision, was sold to a Mrs. Rohrer as a first mortgage. To make it such, appellee and Edwin J. Bowes, Jr., as trustee, on April 2, 1901, executed an agreement in writing (called a "subrogation agreement") by the terms of which the lien of the Dawes note and trust deed for $2,000 was made "subject and subordinate" to that of the note and trust deed sold to Mrs. Rohrer. The record shows that by two deeds dated, acknowledged and recorded in April, 1901, and in August, 1901, respectively, all of the property covered by the Dawes

trust deed was released therefrom except the south 22 feet, which is the part covered by the trust deed sold to Mrs. Rohrer, and now known as lot 5 of Beardsley's re-subdivision. These release deeds recite a consideration of "one dollar and other good and valuable considerations," but Bowes testified that nothing was ever paid to, or received by appellee, as a consideration for either of said release deeds.

The record further shows that subsequent to the execution and delivery of the note and trust deed which was sold to Mrs. Rohrer, lot 5 was sold to Ann Eliza Westcott, who, on October 7, 1901, executed her notes for $600, payable 1, 2 and 3 years respectively after date, and to secure the same, executed her trust deed conveying said lot 5 to Edwin J. Bowes, Jr., as trustee, which trust deed recited that it was subject to a prior trust deed for $3,000, but made no mention of the Dawes trust deed for $2,000. These notes of Mrs. Westcott were apparently paid in due course, and cancelled.

The record also shows that on January 10, 1907, there was filed for record a release deed, purporting to be signed on August 1, 1906, by Edwin J. Bowes, Jr., as trustee, and purporting to be acknowledged by him on the same date before John H. Londrigan, a Notary Public of Cook County, Illinois, and purporting to release said lot 5 from the lien of said Dawes trust deed. The record also shows that appellants became the owners of said lot 5 subsequent to the date of the record of said release deed.

It further appears that although the Dawes note for $2,000 was by the terms thereof due and unpaid in October, 1902, and although there was also (apparently) then due and unpaid six months' interest thereon, appellee took no steps to collect the same, or to enforce the lien of the trust deed securing the same, until this bill was filed in November, 1909. Bowes explained the delay by stating that he had several times promised Mrs. Rohrer that he would do nothing "until she got

her money out of it first.'' In July, 1909, Mrs. Rohrer brought a foreclosure suit against the then owners of lot 5, but a month later she was paid in full and the suit was dismissed. In November following, appellee filed this bill to enforce its lien under the Dawes trust deed, against lot 5 only, alleging that the remainder of the property described in the trust deed had been released in 1901, that nothing had been paid on the principal note, that no interest had been paid after the maturity of the third interest coupon, that there was due for principal, $2,000, and for accrued interest, $1,069.40, and solicitors' fees, and that the premises were scant security for such indebtedness and costs.

Upon the hearing a certified copy of the release deed of August 1, 1906, was offered in evidence. Counsel for defendants also offered to show that the original was not to be found, but appellee's counsel stated that he ''had no objection to a certified copy,'' and for that reason proof of the loss of the original was dispensed with. Edwin J. Bowes, Jr., testified that he had never signed, executed or delivered such a release deed, and had never seen the original, nor the record thereof; that the Dawes note and trust deed had been in appellee's possession since it was delivered by Dawes in 1900, and nothing had been paid thereon except eighteen months' interest. He further testified that Londrigan, the notary whose signature and seal were attached to the purported acknowledgment of the release deed, was and had been for fifteen years, employed in his office.

At the close of the evidence, the court remarked that ''Mr. Bowes is a man of standing in the community. Somebody has been committing a crime. There has been a forgery committed here, or perjury on the part of Mr. Bowes, which I cannot for a moment think of.'' On this view of the evidence the court entered a foreclosure decree as prayed in the bill of complaint, finding in terms that Bowes ''did not sign the release deed purporting to be the release of said lot

five,'' and directing the sale of lot 5 on default of payment by appellants within five days of the whole amout due on the Dawes note, with interest, costs and attorneys' fees amounting to $3,411.

We do not think that the decree of the court below can be sustained upon the facts contained in this record. The evidence relied on by appellee as tending to prove that the release deed of August 1, 1906, is a forgery, is the testimony of Mr. Bowes alone, uncorroborated by any fact or circumstance other than the fact that he had possession of the Dawes note, which had never been cancelled. The law is well settled that where a deed purports to be duly acknowledged under the hand and seal of an officer authorized by law to take such an acknowledgment and to certify thereto, the effect of the officer's certificate as to the due execution of the deed cannot be overcome merely by the uncorroborated evidence of the grantor, but in such case, the grantor's denial must be supported by evidence so clear, satisfactory and conclusive in its nature as to exclude every reasonable doubt. In Strauch v. Hathaway, 101 Ill. 11, a bill in equity was filed to set aside a trustee's sale and to have a homestead assigned out of the property sold, upon the alleged ground that the deed of trust contained no waiver of the homestead by the wife of the grantor. It was admitted that the deed of trust was signed by the wife as well as the husband, and the certificate of the magistrate was in due form, showing a release and waiver of the homestead by both. It was claimed that as a matter of fact, however, the husband went alone to the house of the magistrate, and that the wife was not present in his office at any time. Witnesses were heard who testified on both sides of this claim. The court there stated the rule in such cases to be as follows (p. 15):

''While we hold the certificate shall not be deemed conclusive in any case so as to cut off all inquiry, yet where there is no evidence of fraud, conspiracy or

over-reaching of any kind, or anything casting a suspicion upon the integrity or honesty of the certifying officer, and the certificate of acknowledgment is in conformity with the statute, it cannot be impeached by merely negativing the facts therein stated. Monroe v. Poorman, 62 Ill. 523; McPherson v. Sanborn, 88 Ill. 150; Russell v. Baptist Theological Union, 73 Ill. 337.

"Where the controversy is between the former owner and an innocent purchaser, as in the present case, before the title of the latter can be thus impeached the evidence should be clear and conclusive, excluding every reasonable doubt."

In another part of the opinion the court said:

"Under such circumstances, nothing but the most clear and satisfactory evidence would warrant us in declaring the certificate of the justice a forgery, and thereby defeating the title of the purchaser at the trustee's sale, who in good faith paid his money for the premises, relying upon the genuineness and truthfulness of the certificate. If landed titles could be set aside and defeated upon a mere conflict of verbal testimony, like that presented in the present case, without any evidence tending to establish fraud or conspiracy, no one could know, with any degree of assurance, when he would be safe in buying a title of any kind, and the general confidence in titles of record would soon be destroyed."

In Gritten v. Dickerson, 202 Ill. 372, a bill was filed for the cancellation of a deed purporting to have been executed by Gritten and his wife, conveying 640 acres of land. Upon proof of the loss of the original deed, a certified copy thereof was offered in evidence, and the wife of Gritten testified that she had never signed the deed, and could not write her name. The notary was dead at the time of the trial, but three witnesses, one of whom was disinterested, testified that she was present when the deed was signed and requested the notary to sign her name and then made her mark upon the deed. Upon these facts the court said (p. 376):

"The certificate of the notary, that the deed was duly acknowledged by the appellant is such evidence

of its execution as cannot be overcome by the testimony alone of the appellant, one of the grantors in the deed. This court has held that the uncorroborated testimony of the grantor, or party executing a deed, is not sufficient to overcome the evidence afforded by the officer's certificate of acknowledgment. Clear and satisfactory proof is required to impeach a certificate of the acknowledgment of a deed. It is not sufficient that the testimony of a grantor as to the non-execution of the deed should be slightly corroborated. The proof, to sustain the charge that such certificate of acknowledgment is untrue and fraudulent, 'must be of the clearest, strongest and most convincing character, and be by disinterested witnesses.' (Sassenberg v. Huseman, 182 Ill. 341, and cases there referred to; Oliphant v. Liversidge, 142 Ill. 160, and cases there referred to; Davis v. Howard, 172 Ill. 340.) In Russell v. Baptist Theological Union, 73 Ill. 337, we said (p. 341): 'It is a rule that the acknowledgment of a deed cannot be impeached for anything but fraud, and, in such cases, the evidence must be clear and convincing beyond a reasonable doubt.' "

It is, however, urged that the possession of the note and trust deed by Bowes is a fact which strongly corroborates his testimony. We cannot agree with this view. The release deed in question did not purport to release all the property described in the trust deed, nor all the indebtedness secured thereby. It would be unreasonable to assume that the legal holder of a note would surrender it upon the payment of only part of the amount due thereon, or upon the execution of a partial release of the security. If it be said that this was the last or final release, still it does not follow that the notes would therefore be surrendered to the owner of one part only of the property affected. The trustee in such case would naturally be the proper custodian of the note. Moreover, it appears that nothing was paid on the note when the prior releases were given and the last release does not purport to have been given in consideration of the payment of the whole debt.

This fact suggests another vital objection to the decree, even if it were proved beyond a reasonable doubt that the last release deed was a forgery. It appears that appellee, through its officers, had full notice of the fact that after the Dawes trust deed was executed and delivered, the property thus mortgaged was sold in separate lots to divers purchasers. It appears further, as above stated, that by the prior releases, four-fifths of the property described in the Dawes trust deed was released from the lien thereof by the voluntary act of the trustee, with the knowledge and consent of appellee, without the payment by anyone of any amount whatsoever to be applied on account of the indebtedness secured thereby. There is evidence that each of the parcels so released was of some value at least, but no allowance or credit was made for the value of such lots.

In Boone v. Clark, 129 Ill. 466, it is said, (p. 482):

"And if the mortgagee, having notice of successive alienations of parts of the mortgaged premises, releases a part then liable for the payment of the debt, he can not charge the other portions of the premises without first deducting the value of the parts released. (2 Jones on Mortgages, sec. 1631.)"

This point is only hinted at, rather than insisted upon, in appellants' briefs, but as it goes to the merits of the case, we cannot disregard even the hint. It would be clearly inequitable to permit appellee, for purposes of its own and without making any credit upon or reduction of the indebtedness, to release four-fifths of the security with full knowledge of the fact that there have been successive conveyances of parts of the premises, and then charge the remaining fifth with the whole indebtedness. Especially is this true where, as here, the part thus remaining is alleged to be scant security for the payment of the debt. The authorities are clear that under such circumstances, the purchaser of the part remaining is entitled to a credit upon the mortgage debt of a sum equal to the value of the property released. Hawhe v. Snydaker, 86

Ill. 197; Ames v. Witbeck, 179 Ill. 458; Boone v. Clark, *supra*.

For the reasons indicated, the decree of the Circuit Court will be reversed and the cause remanded for further proceedings not inconsistent with the views herein expressed.

*Reversed and remanded.*