## HALL v. HALL.

DEEDS—NOTARY PUBLIC—PRESUMPTIONS—ACKNOWLEDGMENT.

> A decree dismissing the bill of a married woman to cancel or set aside a conveyance of her dower interest in a farm, was justified by proofs which failed to overcome the legal presumption of the correctness of the notarial certificate, appearing on the instrument, and which failed to convince the circuit judge that she had not signed the conveyance, showing that the notary who remembered the transaction secured her acknowledgment in the usual way, although she denied executing or acknowledging it.

Appeal from Huron; Beach, J. Submitted October 18, 1915. (Docket No. 136.) Decided January 3, 1916. Rehearing denied April 21, 1916.

Bill by Jessie E. Hall against James H. Hall and others to set aside a deed, and other relief. From a decree dismissing the bill of complaint, complainant appeals. Affirmed.

*Hall, Gillard & Temple,* for complainant.

*Paul Woodworth* and *Thomas Wellman,* for defendants.

MOORE, J. The complainant was the wife of defendant James H. Hall. He was a man of affairs. In 1905 Mr. Hall had a bank at Port Austin which was in charge of his son H. Le Roy Hall, cashier. He had a bank at Kinde in charge of his son Ernest G. Hall, cashier. He was also the owner of considerable real estate; one tract of which, containing 738 acres, was known as the Clover Blossom farm. Some disagreements had arisen between Mr. and Mrs. Hall, but, so far as the record discloses, they were living together. Mr. Hall was indebted to his brother Charles L. in a considerable sum, and was also indebted to David I. Salisbury in the sum of $3,000 to $5,000. Mr. Hall decided to form a corporation to be called the "Clover Blossom Farm Corporation." He drew a deed from himself and wife of the 738 acres running to the Clover Blossom Farm Corporation. The deed was given to his son Le Roy Hall, who was a notary public, who took it to his mother, who signed it. The witnesses were a daughter of Mr. and Mrs. Hall and the son H. Le Roy Hall. A little later the deed was put upon record. The corporation was at once formed, with a capital of $50,000, 498 shares of the par value of $10 were issued to Mr. Hall, one share to H. Le Roy Hall, and one share to Ernest G. Hall. Mr. Salisbury increased his loan to $10,000, and Mr. Hall assigned to him 140 shares of the stock of the corporation as security. Mr. Hall also pledged 100 shares to his brother Charles L. Hall, whose loan to John H. Hall had increased to more than $7,000. Mr. Hall's business affairs did not improve, and March 2, 1912, his banks were compelled to suspend payment. Two days later he assigned the

assets of the banks to trustees. Still later involuntary bankruptcy proceedings resulted in the appointment of a trustee in bankruptcy.

It is the claim of the complainant that in November, 1911, she saw an item in the newspaper of a transfer of some of the land comprising the Clover Blossom farm, which surprised her, as she had not been asked to sign the deed; that she then instituted inquiries, which resulted in her learning for the first time that it was claimed she had signed a deed of these lands to the Clover Blossom Corporation. When she learned the situation she commenced a divorce proceeding against Mr. Hall on February 21, 1912, and on March 8, 1912, she filed her bill of complaint against the trustees to whom Mr. Hall had made his assignment to recover her dower interest in certain lands and to set aside the deed made in 1905 to the Clover Blossom Farm Corporation. March 18, 1913, a decree of divorce was granted complainant. Her property rights were determined, except as to her rights in the Clover Blossom farm property which rights were to await the outcome of the case after a hearing. The case was heard in open court, and a decree was entered dismissing the bill of complaint. The case is brought here by appeal.

In the trial in the court below James H. Hall was called by the complainant under the statute for cross-examination. Mrs. Hall testified at great length. The daughter who was a witness was called. The son H. Le Roy Hall testified, in substance, that the banks controlled by his father required more funds, and that it was considered an unwise business policy to mortgage the land for fear of the effect on depositors, and it was decided to incorporate the farm and use the stock as required as collateral security to secure the money advanced; that, in pursuance of this policy, the deed was prepared by his father, and was given

him to take to his mother to secure her signature; that he took the document as was customary, went to the mother, told her that they were incorporating "The Farm," and that the deed was a deed to the corporation of the farm property; that she signed the deed together with the bill of sale, which was the accompanying document conveying the personal property to the corporation; that he then took the acknowledgment, and his mother acknowledged that the execution was her free act and deed; that the paper was witnessed by his sister Florence L. Hall, and was turned over to the corporation and the incorporation was completed. Mrs. Hall denied his version of what happened. She also denied the giving of many other deeds and mortgages. When confronted with them she admitted they bore her signature, but declared she did not know what they were when she signed them.

In *Hourtienne* v. *Schnoor*, 33 Mich. 274, the complainant filed her bill to avoid a mortgage on her homestead, claiming she never knowingly signed or acknowledged it. In affirming a decree dismissing her bill of complaint, the court said in part:

"All presumptions in cases of this kind must be treated with reasonable respect to the inprobability of misconduct in a reputable officer, or of forgery which he ought to have discovered if it existed; and the burden of proof was on complainant to make out a plain case."

See *Johnson* v. *Van Velsor*, 43 Mich. 208 (5 N. W. 265); *Cameron* v. *Culkins*, 44 Mich. 531 (7 N. W. 157); *Dikeman* v. *Arnold*, 78 Mich. 455 (44 N. W. 407).

In affirming a decree holding that the alleged release of a mortgage was a forgery the court stated the rule as follows:

"It is doubtless true in relation to deeds, mortgages, and releases that 'all presumptions are in favor of the

certificate, and it must be treated with reasonable respect to the improbability of misconduct in a reputable officer, or of forgery which he ought to have discovered if it existed, and the burden of proof is on the party denying it to make out a plain case' (*Hourtienne* v. *Schnoor*, 33 Mich. 274; *Johnson* v. *Van Velsor*, 43 Mich. 219; *Dikeman* v. *Arnold*, 78 Mich. 470 [44 N. W. 407]) ; and that a certificate in proper form can be impeached only by clear, convincing, and satisfactory proof that it is false and fraudulent (*Barker* v. *Avery*, 36 Neb. 599 [54 N. W. 989] ; *Phillips* v. *Bishop*, 35 Neb. 487 [53 N. W. 375] ; *Insurance Co.* v. *Nelson*, 103 U. S. 544; *Russell* v. *Theological Union*, 73 Ill. 337; *Bailey, Wood & Co.* v. *Landingham*, 53 Iowa, 722 [6 N. W. 76] ; *Smith* v. *Allis*, 52 Wis. 337 [9 N. W. 155] ; *Barrett* v. *Davis*, 104 Mo. 549 [16 S. W. 377]). The testimony offered by Miss McBrian meets these requirements." *Saginaw Building, etc., Ass'n* v. *Tennant*, 111 Mich. 515 (69 N. W. 1118).

See, also, *Shelden* v. *Freeman*, 116 Mich. 646 (74 N. W. 1004).

The trial judge, who is a man of great experience, saw and heard the witnesses in open court. His decree indicates a failure in his judgment on the part of complainant to make a case.

We have not overlooked the cases called to our attention by the solicitors for the complainant of *Camp* v. *Carpenter*, 52 Mich. 375 (18 N. W. 113), and *Wright* v. *Wright*, 79 Mich. 527-531 (44 N. W. 944). A reference to them will show they are very different cases from the one we are considering.

The pivotal question is one of fact. It would profit no one to set out the testimony in detail. We have gone over this voluminous record with care, and we think the decree of the court below was a proper one.

It is affirmed, with costs.

STONE, C. J., and KUHN, OSTRANDER, BIRD, STEERE, BROOKE, and PERSON, JJ., concurred.