CAROLINE L. CAMERON, TRUSTEE AND GUARDIAN v. TIMOTHY CULKINS, ANN CULKINS ET AL.

*Presumption of genuineness from due acknowledgment of conveyance—Forgery—Evidence.*

A genuine certificate of acknowledgment is presumptive evidence of the genuineness of the document to which it is attached.

The acknowledging officer is bound to inform himself of the identity of the parties acknowledging a conveyance.

The defense to a foreclosure was that the mortgage was forged. But it appeared that the persons actually and nominally interested as mortgagees were both dead; that the mortgager and his wife were the only persons living who knew the real facts; that the witnesses to the acknowledgment, one of whom was the acknowledging officer, were reputable and upright men, and that their signatures were genuine; that the signature purporting to be that of the mortgager and alleged to be forged, resembled that attached by him to his answer in the foreclosure suit, and both were in an easy handwriting unlikely to be feigned; that the defendant had tried to misrepresent the spelling of his name, and his explanation of the circumstances of an alleged payment for the mortgaged land were unsatisfactory and were not corroborated, and his manner as a witness was evasive. *Held* that in view of the facts and circumstances the defense was not sufficiently made out.

Appeal from Calhoun.    Submitted Oct. 29.    Decided Nov. 9.

FORECLOSURE.    Defendants appeal.    Affirmed.

*John C. Patterson* and *Wm. H. Brown* for complainant.

*Jas. H. Campbell* and *W. H. Porter* for defendants.

CAMPBELL, J.    The bill in this cause was filed to foreclose a mortgage for $1848.54, accompanied by two notes, one for $1600, and the other for $248.54, dated September 5, 1870, made by Timothy Culkins and Anna Culkins, his wife, to John Cameron or bearer, and payable in five years with annual interest, the large note at 7 and the small note at 10

per cent.  The papers are claimed to have been executed and delivered to Charles Cameron, the real party in interest, but made in his brother John's name, as the latter held title to more or less of the property of Charles.  It is claimed that $1600 was a balance of principal due on a land contract for the same premises made about two years before, and the smaller note was for accrued interest compounded once at ten per cent. according to the terms of the contract.

Charles Cameron died a few weeks after this mortgage was dated, and the papers were found with other securities among his documents and turned over by his administrator to complainant as guardian of his children.  John Cameron had previously assigned them to her in trust for the same purpose,

The defense is that these documents are forged, and that Culkins paid for the land and took a conveyance within a period of a few weeks from the date of his contract.  He produces a deed acknowledged about that time, but not recorded till immediately upon Charles Cameron's death.

The mortgage was left for record January 26, 1874, but was not put in the record books for some years thereafter, Culkins having filed an injunction bill to restrain the record, which was discontinued January 26, 1877.  This bill was filed against the administrator of Charles Cameron and complainant and her children, as well as the register.

The circuit court for the county of Calhoun held the mortgage genuine and granted a decree of foreclosure.  Culkins and wife are the only parties who appeal.

Only one question is presented, and that is whether the mortgage is genuine.  If it is, the decree is correct.  If not, there is no ground of equity.

John Cameron, who is not supposed to have had any personal knowledge of the transaction, died in April, 1874.  Charles Cameron died in October, 1870.  There is no person living except Culkins and wife who know anything of the real facts, and this was the case when Culkins filed his bill in 1874.

The testimony consists of the examination of these parties, and various documents and pieces of expert testimony,

and the evidence of one of the subscribing witnesses to the mortgage. Beyond this there is not much that throws light on the subject, except some proofs as to business transactions of more or less circumstantial value.

The original mortgage bears the signature of Francis W. Shearman, as witness and acknowledging officer. The other witness was William Jewell, who was sworn and positively identified his own signature, and remembered the signing by himself, but had no distinct recollection beyond this except that Shearman called him into his office for the purpose of attesting. Mr. Shearman having been a gentleman very generally known, his signatures were established with equal positiveness by several witnesses, and it is practically conceded they are genuine.

This, under our statutes, makes the acknowledgment presumptive evidence of genuineness (Comp. L. §§ 4233, 5930), without reference to the common law doctrines relative to subscribing witnesses. And the presumption that two reputable and upright citizens would not have attested a false instrument is very strong. Whatever may be said of the possible ignorance of parties by one of the witnesses, the acknowledging officer is bound to inform himself of the identity of the parties, and Mr. Shearman's position was such as to render it likely that he did know them, aside from the obligation of official duty. *Hourtienne v. Schnoor* 33 Mich. 274. No innocent explanation is given for any mistake of Mr. Shearman, and, if his certificate is untrue, he must have been very careless or the victim of a conspiracy of which no proof, circumstantial or otherwise, is given, beyond the testimony of defendants.

The handwriting, which is denied by Culkins, his wife not being educated apparently, has been testified to by persons who had dealt with him. There are three other documents in the case, with which comparisons have been made, and on which there is the usual contrariety of opinions. The signatures of Culkins to the notes and mortgage are those of a very fair penman, and in a reasonably easy handwriting. They are natural and have none of the marks of feigned sig-

natures. The answers filed in the present cause, in which the defense of forgery was set up, is signed with small letters instead of capitals beginning the first and second names. But the handwriting is altogether too easy to accord with such ignorance. The signature to the bill filed in 1874, bears a remarkable general likeness to the disputed signatures, and is substantially identical in some of the details ; so is that of a deed made just before the contract of 1868, to Mr. Styles. We think the evidence of genuineness of handwriting quite as satisfactory as we usually find it. If forged, it is the work of a very expert forger. But in considering it, we cannot overlook the fact that Culkins in his testimony has undertaken to give palpably false statements concerning the manner of spelling his name, as Calkins, in which he is completely discredited by the general course of his dealings and by his wife's testimony. The method of signing his answer indicates a fraudulent intent to create false appearances.

We are no more favorably impressed by his explanations. He purchased the land in question on executory contract in 1868, on seven years' time, paying two hundred dollars down, and stipulating for annual interest. He now says that within two months thereafter he paid up the entire purchase money and got his deed. The deed was unquestionably dated and acknowledged in October and November, 1868. But there is no claim that Culkins had any idea of paying in full until sometime in November, and there is no reason for supposing the deed was made in October for any such purpose. Its record in October, 1870, corresponds with the theory of complainant that it was delivered when the mortgage was taken, and was made soon after the sale to enable Charles Cameron, the real party in interest, to have the means of conveying title. No satisfactory theory occurs to us why on defendant's theory the deed was antedated to October, 1868.

This however is not conclusive either way. But in order to show payment, complainant narrates his means of payment and when he obtained them. According to his story he had kept $900 in gold for seven years, and made his payment with that and other means, all of which he had on hand when

he made the executory contract. No sensible explanation is given why he did not pay the price in the first place, and the history of his accumulations is very misty and unsatisfactory. His story seems improbable, and there is nothing in the bank or other transactions of Mr. Cameron to corroborate it. The only paper found is his endorsement on the executory contract containing the exact computation of the sum inserted in the mortgage, and a memorandum referring to the exchange of papers on the day of its date.

Defendant's bearing on the witness stand, so far as evidenced by the answers to questions, was evasive and does not impress us favorably. As the circuit judge, who saw all the witnesses, came to the conclusion that his story was untrue, we feel the less hesitation in coming to that conclusion.

On a mere question of fact it is impossible to give all the reasons which produce conviction. But we feel convinced that the defense is not founded in truth.

The decree must be affirmed with costs.

The other Justices concurred.