## METROPOLITAN LUMBER CO. *v.* McCOLEMAN.

1. ACKNOWLEDGMENT—EVIDENCE—PRESUMPTION OF GENUINENESS.
   Instruments properly acknowledged carry with them a presumption of genuineness, which must be overcome by a preponderance of evidence.

2. APPEAL AND ERROR—QUESTIONS CONSIDERED—CONCLUSIVENESS OF VERDICT.
   Where there was sufficient evidence to go to the jury, this court cannot try the facts whatever its opinion may be as to the weight or credibility of the testimony.

3. REPLEVIN—ATTACKING DEFENDANT'S TITLE—EVIDENCE—SUBSEQUENT BILL OF SALE.
   Where, in replevin for logs, it appeared that defendant cut the timber during a certain season, claiming ownership, under an agreement with the landowner, it was proper to refuse to permit plaintiff to introduce a bill of sale of such timber given by the landowner thereafter, in the absence of any evidence impugning defendant's title, and laying a foundation for the introduction of such bill.

4. SAME—BURDEN OF PROOF.
   Where, in replevin for logs, it appears that the timber was cut by defendant under a claim of right, and that he was in possession of it when replevied, he is entitled to judgment unless plaintiff establishes his right to it.

5. JUDGMENT—ESTOPPEL.
   Where defendant gave plaintiff a bill of sale of standing timber, to a portion of which he had no title, and subsequently allowed judgment in a suit for breach of covenant, owing to the failure of title as to a portion of the timber, to be taken against him by default and satisfied the same, his conduct did not estop him from claiming, in a replevin suit subsequently tried, that the bill of sale produced and relied on by plaintiff was not the one that he had executed.

Error to Iron; Stone, J. Submitted January 4, 1905. (Docket No. 3.) Decided June 6, 1905.

Replevin by the Metropolitan Lumber Company against Zebina McColeman and the Marinette Lumber Company.

There was judgment for defendants, and plaintiff brings error. Affirmed.

*F. D. Mead* (*R. C. Flannigan*, of counsel), for appellant.

*George Gallup* (*Arthur H. Ryall*, of counsel), for appellees.

McAlvay, J. Plaintiff company brought replevin against defendants for about 200,000 feet of pine saw logs cut from S. W. ¼ and N. ½ of N. ½ of Sec. 33, town 44 N., of range 35 W., Iron county, claiming title to said property and right of possession by virtue of a purchase of the same for $800 from defendant McColeman, evidenced by two bills of sale of standing timber, one given by McColeman and Paul C. Peters and wife, dated November 25, 1891, and one given by McColeman, dated August 29, 1892, both filed with the township clerk February 9, 1894, and both recorded in the register of deeds' office for Iron county December 26, 1895. These bills of sale were produced in evidence, and were of the ordinary form, with warranty clause, and no limitation as to the time for removal of timber. Upon the trial it appeared without dispute that a large part of the logs were cut and taken from the lands described in the bill of sale by defendant McColeman. A small part was taken from another description on the same section and from section 9. Defendants appeared and pleaded the general issue jointly. Defendant McColeman claimed the timber, and had sold or negotiated it to the other defendant. His defense was that the bills of sale executed and delivered by him to the plaintiff contained a limitation clause of three years in which to remove the timber, and that he had removed the timber after the expiration of said three years. He denied ever having executed and delivered the bills of sale produced by plaintiff, and claimed that they were forgeries. It was shown that McColeman never owned the timber on the S. W. ¼ of section 33 conveyed by his bill of sale of August

29, 1892, for the reason that the timber stood upon the homestead lands of one Shimeon, who alone signed the bill of sale to McColeman, and afterwards a bill of sale of the same timber, signed also by his wife, to one Kelly, who sued plaintiff for timber taken from that description and recovered judgment for $638.46 and costs against it, which judgment was paid. Plaintiff then sued McColeman for breach of warranty, to recover the consideration paid him for this timber, and, after service of the declaration, notice of retainer was served by defendant, but he did not plead, and judgment by default was regularly entered against him for $252 and costs, which he afterwards paid and satisfied. Records and proofs of the proceedings and judgments in both these cases were introduced without objection. In the Kelly case, defendant McColeman was a witness for plaintiff Kelly.

This case is brought here by plaintiff company, against which a judgment of $2,029.10 was recovered in the court below; defendants having waived a return of the property. Plaintiff moved for a new trial, relying principally upon the grounds that the verdict was clearly against the weight of evidence; that defendant McColeman, by his conduct, was estopped from denying the execution of the bill of sale of August 29, 1892; that the court erred in excluding the bill of sale from Ratagsack, purporting to convey to plaintiff all pine timber cut from the south half of the north half of section 33; and because the court left to the jury to determine the quantity of the timber cut and removed from the northwest quarter of the southwest quarter of section 33; the defendant McColeman being bound by the amount of such timber and the value thereof as determined by the verdict and judgment in the Kelly case. The court held with the plaintiff upon the last proposition, and granted a new trial unless defendants remitted all of the judgment in excess of $1,500. Plaintiff refused to accept such remittitur offered by defendants, and excepted to the ruling of the court in not granting the motion without conditions.

In the brief and argument of counsel for plaintiff, the principal contention urged is that the court erred both in his charge to the jury and in refusing to grant a new trial, in not holding that it appeared by a clear preponderance of the evidence that the bills of sale were genuine.

The law is well settled that instruments properly acknowledged carry with them a presumption of genuineness, which must be overcome by a preponderance of evidence. In this case the testimony of the notary was that the second bill of sale was not signed, nor was the consideration written in, at the time he took the acknowledgment. This testimony was offered by plaintiff on direct examination. The testimony offered by plaintiff relative to the execution and acknowledgment of the first bill of sale by McColeman and Peters was in support of the regularity of the acknowledgment. The defendant denied that he executed these instruments, claiming that the signatures were not genuine, and offered the testimony of himself and others in support of this contention. The charge of the court relative to the burden of proof, the preponderance of evidence as to, and in submitting this branch of the case, was not erroneous. There was sufficient proof to go to the jury upon the question as to whether these bills of sale were genuine or not, and it would have been error to have held otherwise. This court cannot try the facts, whatever its opinion may be as to the credibility or weight of the testimony in any given instance.

Some of the logs replevied were taken from land not described in the bills of sale, known as the "Ratagsack Land," and defendant McColeman testified as to this timber as follows:

" Q. This timber that came from the south half of the north half—the Ratagsack land—you don't claim to own that, do you? You never claimed to own it?
" A. Yes, sir; I claim to own it.
" Q. You do claim to own it?
" A. Yes, sir; I had an agreement with Ratagsack."

This testimony was given in answer to questions pro-

pounded by counsel for plaintiff, and constitutes all of the testimony upon the subject. Counsel made no effort to ascertain the exact nature of McColeman's title to this timber, but apparently treated the testimony as competent and sufficient. Later in the case, plaintiff's counsel called William Ratagsack, whose entire testimony, as disclosed by the record, was as follows, viz. :

"I live in Atkinson township. I have lived there thirteen or fourteen years. I knew Anton Shimeon and his wife. He was my neighbor. He was living there in 1890 –1892. His wife lived with him there all the time. I knew of his selling the pine timber to McColeman. It was sold about the time he proved up."

Plaintiff's counsel then called another witness, and, after examining him, the following occurred:

"*Mr. Mead:* I desire to make this offer: I offer the bill of sale from William Ratagsack to the Metropolitan Lumber Company, dated May 9, 1899, purporting to convey to the company all pine timber cut from the S. ½ of the N. ½ of Sec. 33—44—35, during the winter of 1895 and 1896—Mr. McColeman, on the stand, having made the statement that he claimed to own it—since your honor would not consent to an amendment of the declaration.

"*Mr. Gallup:* I object to that as immaterial and irrelevant.

"*The Court:* I will sustain the objection, for the reason that it is not covered by the pleadings in the case.

"*Mr. Mead:* Give me an exception."

Plaintiff claims that although this timber was purchased after the suit was commenced, and was not covered by the pleadings, still it was entitled to show its ownership in rebuttal of defendant's claim of title, and as affecting his measure of damages. While the learned trial judge probably gave an erroneous reason for his ruling, we are satisfied that the ruling itself was correct. McColeman cut this timber in 1895–96, claiming ownership under an agreement with Ratagsack, from whom plaintiff also claims title by bill of sale dated in 1899—several years after the timber had been cut. No question was asked

Ratagsack as to the validity or invalidity of McColeman's title, or as to the facts, if any, supporting the bill of sale to McColeman. McColeman, up to the time of the offer, appeared to have had a valid title when he cut the timber, in 1895–96; and until some testimony was given impugning that title, and laying the foundation for the introduction of the bill of sale of 1899, that instrument was wholly immaterial.

Plaintiff's counsel also contended that the defendants failed to prove title or the right to the possession of the logs, admitting that the bills of sale offered in evidence by the plaintiff were not the ones signed by McColeman. We adopt the language of the trial judge in disposing of this contention on the motion for a new trial, as follows:

"As I have already said, the claim of the plaintiff, and the only claim of the plaintiff, to the timber in question, was by virtue of the two bills of sale, Exhibits A and B. If these bills of sale were not signed by McColeman in the one instance, and by McColeman and Peters and wife in the other instance, and delivered to the plaintiff, then plaintiff's right and interest in the timber ceased. The timber had been cut by McColeman under a claim of right, and he was in possession of it when it was replevied. If plaintiff failed to establish its right to it, then defendant was entitled to a return of the property, or a verdict for its value, its return having been waived."

Plaintiff's counsel further contend that:

"The defendant, by his conduct in not contesting the suit brought on the bill of sale of August 29, 1892, by the plaintiff to recover damages for breach of warranty, and permitting judgment to go against him, and paying the judgment, is now estopped to deny his signature to that bill of sale."

McColeman received from Shimeon a bill of sale of the pine timber on his homestead (the northwest quarter of the southwest quarter of section 33) on the 29th day of August, 1892, and on the same day executed a bill of sale of the entire southwest quarter, including the same timber, to the plaintiff. The bill of sale to McColeman was void

because not signed by Shimeon's wife. On the 15th day of April, 1895, less than three years from the date of Mc-Coleman's bill of sale to plaintiff, Shimeon and his wife conveyed the southwest quarter of section 33, by warranty deed, to Patrick Kelly, in fee. The replevin suit now before us was commenced in March, 1896. Patrick Kelly commenced his suit in trover against the present plaintiff some time in 1896 or early in 1897; securing a verdict and judgment February 16, 1897. Plaintiff herein commenced suit against McColeman by declaration filed August 8, 1900, in a plea of breach of covenant, reciting:

"That on the 29th day of August, 1892, the said defendant Zebina McColeman, by his deed bearing date of that day, and now to the court here shown, for the consideration therein mentioned, to wit, $300, conveyed to the said plaintiff, its successors and assigns, all the merchantable pine timber now standing, lying, or being on the S. W. ¼ of Sec. 33 in town 44 north, of range 35 west, and that the said defendant did covenant, in and by said covenants, to warrant and defend the sale of said property thereby made unto the said plaintiff, its successors and assigns, against all and every person or persons whatsoever, which said land and timber was situated in the said county of Iron."

The declaration further averred that the defendant—

"Was not at the time of the making and delivery of said deed lawfully seised of an estate in fee simple in and to *all* of said real property, nor had he then good right and full power to convey the same."

The declaration then averred:

"That at the time of the making and delivery of the deed aforesaid one Anton Shimeon had the lawful right and title to the N. W. ¼ of the S. W. ¼ of the said section 33. * * * That the said last above described parcel of land was occupied by the said Anton Shimeon as his homestead, and that on or about the 15th day of April, 1895, the said Anton Shimeon and his wife, by warranty deed duly executed and delivered by them, granted and conveyed the lands above described to one Patrick Kelly, who thereupon entered upon said last above described

parcel of land and cut and removed the pine timber standing thereon."

It is apparent that this suit for breach of covenants related solely to the Shimeon 40, and the jury were instructed by the court not to include in their verdict in the suit at bar, if for the defendants, any damages for the value of timber from this 40. It is equally apparent that the defendant McColeman had no defense against this action for breach of covenant, and he made none. McColeman conceded that he had executed on August 29, 1892, a conveyance of the pine timber on section 33 to the Metropolitan Lumber Company. The point of contest was that the bill of sale which he actually executed contained a time limit. But even if it did, this was no defense, since he had no title to the timber on this 40 when he executed the conveyance, and, according to the declaration, Shimeon and wife conveyed the lands to Kelly April 15, 1895, within the three-year limit, who thereupon entered upon them and cut and removed the pine.

We therefore hold that the court was not in error in ruling that the judgment in the breach of covenant case was not an adjudication which estopped the defendants from claiming that the bill of sale of August 29, 1892, as presented by plaintiff in the suit at bar, was a forgery. Some other errors are assigned, but we are satisfied that they are without merit.

The judgment is affirmed, as remitted by the order of the circuit court.

MOORE, C. J., and GRANT, BLAIR, and HOOKER, JJ., concurred.