## BARNETT et al. v. AETNA LIFE INS. CO.

## SAVINGS INVESTMENT & TRUST CO. v. SAME.

## BARNETT v. EQUITABLE LIFE ASSUR. SOC. OF UNITED STATES.

### Nos. 8252–8254.

Circuit Court of Appeals, Third Circuit.

Argued Oct. 4, 1943.

Decided Dec. 9, 1943.

Writs of Certiorari Denied March 6, 1944.

See 64 S.Ct. 637.

Edward A. Markley, of Jersey City, N. J. (Collins & Corbin, and James J. Langan, all of Jersey City, N. J., on the brief), for defendants-appellants.

Arthur T. Vanderbilt and Walter F. Waldau, both of Newark, N. J. (Lindabury, Depue & Faulks and H. Edward Toner, both of Newark, N. J., and George A. Brown, of Hackensack, N. J., on the brief), for plaintiffs-appellees Jeannette E. Barnett and Leon E. Stropp.

Before JONES, GOODRICH, and Mc-LAUGHLIN, Circuit Judges.

484

## McLAUGHLIN, Circuit Judge.

These three suits present the same questions of law and fact and were consolidated for trial. They are based on insurance policies on the life of one Robert J. Barnett. Plaintiffs did not prove the actual death of the assured but rested their cause of action on the New Jersey Presumption of Death Statute (N.J.R.S. 3:42–1, N.J.S.A.), which reads: "If a resident or nonresident of this state remains beyond the sea, absents himself from this state or from the place of his last known residence, or conceals himself in this state or in the place of his last known residence, for seven years successively, he shall, whenever his death comes into question, be presumed to be dead, *unless it is proved he was alive within that time.*"

Plaintiffs, under that law, presented evidence to the effect that the assured had absented himself for seven successive years after December 28, 1932; and that diligent search for him had been fruitless. The defendants produced testimony in an endeavor to show that Barnett had been seen alive within the seven year period and as late as the latter part of 1940. The appellees urge that since a statutory presumption is here involved, plaintiffs' proofs satisfying the statute, make a jury question of the case, no matter what the defense evidence might be. The defense argues at length against this, asserting that there is no distinction between a judicial and a statutory presumption. They say that in this case they proved by clear and uncontradicted testimony that the assured was alive during the statutory seven years. Based on this, they argue that they have destroyed the presumption and so, were entitled to have verdicts directed in their favor. It is unnecessary to pass upon the suggested distinction between statutory and judicial presumptions because, judged by the very standard set up by the appellants, the defense testimony fails. It is not the clear cut, uncontradicted type demanded by the New Jersey decisions in order to have justified a direction of verdicts in favor of the defendants.

The evidence in the case has been carefully studied in the light of the above rule and with the express and peculiar language of the New Jersey statute in mind, namely, that once the presumption of death is established thereunder, it is effective "unless it is proved he was alive within that time." Two of the six defense witnesses (Brad-shaw and Cutsler) were contradicted, in part, affirmatively in the plaintiffs' case. The believableness of the others was seriously impaired by cross examination. Only one of them, Mrs. Jordan Fosselli, claimed to have known Barnett prior to his disappearance. That lady was patently discredited. The others, indicated the slightest of casual relationships with the person asserted to have been the assured. Of them, Messrs. Sullivan and Donlan, brothers-in-law, claimed to have seen Barnett in 1934 and identified him from the photograph shown them in 1940. They contradicted each other as to time; as to the description of the woman on whom Barnett is supposed to have called; and the circumstances of their intensive application to the matter in 1940 does not help the acceptance of their stories. A superintendent of an apartment house containing 300 people identified a picture of Barnett shown him in 1940 on the basis of his assertion that he saw the assured three times in 1933. The only other defense witness was a person connected with the boat on which the assured was last seen. In view of the shaken credibility of the witnesses for the defense, the substantial testimony for the plaintiffs that a thorough careful search, including a five state police alarm, for a rather well known man, had failed utterly to locate him, was some evidence in contradiction of the defense contention that he had been seen alive, after his disappearance in 1932.

■ The law of New Jersey concededly governs the present issues. The decisions of that state strongly support the proposition that at the close of these cases they presented a jury question. In Tischler v. Steinholtz, 99 N.J.L. 149, 122 A. 880, a Court of Errors and Appeals decision, the "presumption" involved was that of an automobile assumed to be in the possession of the owner or his servant. In an effort to rebut this presumption, as the court stated, there was contradictory evidence by the driver himself who was the son of the owner. The driver's mother and sister also testified. The court, speaking of the rebuttal evidence, said at page 882 of 122 A: "But the evidential value of their testimony was much shaken on cross-examination. In this posture of proof the question of liability of the father was properly submitted to the jury."

Earlier in the opinion, on the same page 882 of 122 A., the court, with reference to

the overcoming of the presumption by uncontradicted proof, said: "If however, the evidence is contradictory, or reasonably subject to contradictory interpretations, the question of liability is for the jury." Citing New Jersey cases.

In Crowell v. Padolsky, 98 N.J.L. 552, 120 A. 23, the New Jersey Court of Errors and Appeals held that the credibility of a defendant and his witnesses was weakened by testimony which had been, in some measure, contradicted and said at page 23 of 120 A.: "Clearly, under these circumstances, the truth of this testimony offered to rebut the presumption was for the jury, and consequently the entire question became one for the jury to solve, and the learned trial judge was right in refusing to direct a verdict for the defendant."

In Dunn v. Goldman, 111 N.J.L. 249, 168 A. 299, a New Jersey Supreme Court case which involved a guaranty contract, the court held that the evidence had to be plenary to completely overcome the presumption there involved.

The appellants cite Hoffman v. Lasseff, 110 N.J.L. 122, 164 A. 293, another New Jersey Court of Errors and Appeals decision. In that case there was no contradiction of the testimony rebutting the presumption which again, was that of the owner of an automobile taken to be in control thereof. The rule, however, as there stated, is exactly the same. Justice Donges speaking for the court said at page 294 of 164 A.: "It may be that the witnesses for defendant were untruthful in their answers; but the testimony as it stands, without contradiction either in the testimony itself or from other witnesses, leaves no room for the drawing of conflicting inferences."

The appellants' supplement to their reply brief sets out in full the Texas Civil Appeals opinion in the case of Mutual Life Insurance Company of New York v. Burgess, 174 S.W.2d 324, 325. That decision is in accord with the above New Jersey law. The presumption of death arising from seven years absence was in that case. On appeal a judgment for the plaintiff was reversed and judgment for the defendant entered, because it was held regarding the defense testimony: "That reasonable minds could not differ, in view of the complete absence of any evidence or any circumstance in the case tending to discredit their testimony * * *." The

court said that an inference established prima facie, together with the evidentiary facts tending to establish it is overcome "only when the evidence tending to support the contrary inference is conclusive, or so clear, positive and disinterested that it would be unreasonable not to give effect to it as conclusive."

The appellants' next point is that the court erred in its charge with respect to burden of proof. They attempt to isolate two sentences from the charge in support of this. A reading of the entire charge shows the trial court to have fairly presented this phase of the matter to the jury.

■ The appellants also object to the exclusion of offered testimony with respect to the practice of collection of tickets on the boat from which the assured disappeared. The testimony was excluded because it came from an incompetent source. The proffered witness indicated that the ticket collector was not under him and that he did not have responsibility for the latter's work. He further said that he did not know of his own knowledge if tickets had been taken up from the passengers. Neither the ticket collector nor some officer superior to him, was produced.

■ Appellants further object to the exclusion of testimony of two witnesses with reference to financial matters in connection with the deceased. As to the first, Simpson; he was asked concerning certain records of a corporation with which the assured had been associated. Examination showed him to be unfamiliar with the records or the details of the business of the company. Van Cleaf, the other witness, also testifying about the affairs of the same corporation, was asked, "Do you know how much money and cash was put in the company," and "Did you lose any money on any of your discounts." He, too, did not have the primary knowledge to answer these questions and objections were properly sustained by the court.

■ The appellants offered in evidence a copy of the inventory of this particular company called "The Discount Corporation." It was offered for the purpose of showing that the company was insolvent at the time the assured disappeared. The fact was already in this trial record; the decree of the Court of Chancery to that effect being in evidence. The inventory contained conclusions of appraisers and an

auditor. A criminal complaint and criminal indictment both against the defendant, were offered by the defense and rejected by the court. Both of these were made, after the disappearance of Barnett. The fact that there was a criminal charge against Barnett and that the police were looking for him, was definitely in the evidence in this case through several witnesses. There was no harmful error in the rejection of these documents.

The judgments of the District Court will be affirmed.

GOODRICH, Circuit Judge (concurring).

From such facts as the record shows with regard to the making of the life insurance contracts involved in this case, I take it that they are governed by the substantive law of New Jersey. I am not so sure that when it is alleged that the condition has occurred which makes the company liable to pay money, that is, the death of the insured, that New Jersey rules about presumptions and methods of rebutting presumptions are controlling. Rules of procedure for federal courts are not controlled by state law at all but by the new rules applicable in federal district courts throughout the country. Rules of evidence were regarded sufficiently as procedural to have a section included in the Federal Rules of Civil Procedure by which federal courts are directed to admit testimony if admissible either under federal statutes or rules of evidence previously applied in federal courts in suits in equity or state rules. But the source of the authority is the federal rules themselves, even though in a particular case the state law is looked to in determining the admissibility of a given piece of testimony. When one gets down to the question of whether proof of a given fact is to be aided by a presumption, that the fact exists, and what kind of testimony meets or eliminates it, is that any less procedural than rules governing admissibility?

The question is difficult; we do not have to come to grips with it in this case. What Wigmore calls "a genuine presumption, of universal acceptance" (9 Wigmore on Evidence (3rd Ed. 1940) § 2531a) of death upon a person's absence from home for seven years, unheard of by the persons who would naturally have received news from him, is recognized by the federal decisions. Davie v. Briggs, 1878, 97 U.S.

628, 633, 24 L.Ed. 1086. So we have the same presumption applicable here, whether federal or state law is looked to. As to meeting a presumption by opposing testimony, we said recently in United States v. Tot, 3 Cir., 1942, 131 F.2d 261, (reversed on another point, 1943, 319 U.S. 463, 63 S.Ct. 1241), that the credibility of evidence offered to rebut a presumption was for the trier of fact to determine. This is what the New Jersey decisions, as we interpret them, also do with regard to the presumption involved here. The perplexing question of what we should do in case the state and federal decisions spoke with different voices, we can defer until we have to meet it.