CAIN v. KROBLEN GMC TRUCK SALES, INC.

1. AUTOMOBILES—TRANSFER OF TITLE—STATUTES.
    The transfer of title of an automobile cannot be effected without compliance with the statute.

2. REPLEVIN—TRACTORS—RIGHT TO POSSESSION—CERTIFICATE OF TITLE.
    Plaintiff in replevin suit to recover possession of a tractor which he claimed to have purchased for cash from party to whom certificate of title had been assigned but which certificate had not been forwarded to the secretary of State *held*, not to have a general or a special interest or ownership giving the right to possession against a defendant who held a prior valid conditional sales contract, chattel mortgage, and note, executed by the person in whom title existed.

Appeal from Kent; Verdier (Leonard D.), J. Submitted April 5, 1960.  (Docket No. 4, Calendar No. 48,136.)  Decided June 7, 1960.

REFERENCES FOR POINTS IN HEADNOTES

[1] 5A Am Jur, Automobiles and Highway Traffic § 162.
    Civil rights and liabilities as affected by failure to comply with the statute upon sale of motor vehicle.  37 ALR 1465; 52 ALR 701; 63 ALR 688; 94 ALR 948.
[2] 47 Am Jur, Sales § 927.
    10 Am Jur, Chattel Mortgages § 197.
    Rights as between conditional sales and one claiming under or through sale or mortgage by buyer which is subject to the seller's reservation of title.  87 ALR 941.

Replevin by Norman Cain, doing business as Cain Buick-Pontiac, against Kroblen GMC Truck Sales, Inc.   Judgment for defendant.   Plaintiff appeals. Affirmed.

*Leo W. Corkin* and *Jack Walker,* for plaintiff.

*Mitts, Smith, Haughey & Packard,* for defendant.

KELLY, J.   Plaintiff filed suit in replevin claiming ownership and seeking possession of a 1950 GMC tractor.   Plaintiff appeals from judgment holding "that the plaintiff has failed to establish by the evidence that he is entitled to recover."

Defendant (on January 16, 1957) sold the tractor here involved to William H. Martz, who executed a conditional sales contract to defendant for the balance due.   Defendant assigned the conditional sales contract to the Yellow Manufacturing Acceptance Corporation (YMAC) and guaranteed payment. Certificate of title was isued to Martz showing lien in favor of YMAC.

Martz subsequently indorsed the certificate of title to Western Hills Land Development Company, a company of which he was part owner, but transfer of title was never forwarded to the secretary of State.

To relieve a financial problem caused by Western Hills' indebtedness of $10,000 to the National Builders Supply Company, Martz assigned to National Builders his interest in a $30,000 farm, and the tractor was also delivered as security for the debt.   The title to the tractor showing ownership in Martz and, also, the affidavit of an officer of Western Hills Land Development Company disclaiming any interest in the tractor, were delivered to National Builders Supply Company.

Because he was in default on the conditional sales contract, Martz sought and obtained the assistance of defendant. This was accomplished by defendant arranging a loan at the bank in a sufficient amount to pay off the lien of Yellow Manufacturing Acceptance Corporation and obtaining from it a reassignment of the contract. Martz at the same time executed a chattel mortgage and note in favor of the bank which assigned them to defendant and then repeatedly and without success endeavored to obtain the title from National Builders so he could deliver same to defendant.

Plaintiff testified that he saw the tractor on National Builders' lot; that he dealt with a Mr. Miller; that when he ascertained the title was in Martz' name he had Miller obtain from Martz a receipt showing payment of $3,000; that he called the Yellow Manufacturing Acceptance Corporation and learned that defendant had paid off the lien; that he called defendant to ascertain what interest, if any, it had in the tractor, but could not get any information; that he called someone in the secretary of State's office and was advised that the title along with the affidavit and receipt were sufficient; that he paid Miller $3,000 cash for the tractor, which plaintiff valued at $4,000; that he then drove the tractor to his place of business; and that defendant removed the tractor from his lot without his consent.

That the trial court was not impressed by plaintiff's testimony is disclosed by the following from the court's opinion:

"Plaintiff bases his claim of the right to possession of the tractor on his theory that he became its owner by purchasing it for $3,000 in cash. The testimony offered by plaintiff in support of his claim that he bought it is far from being convincing.

"It is indeed strange that such an ordinary, commonplace transaction as the sale of a truck should

be so shrouded in mystery. Plaintiff claims to have made the purchase either from or through one Miller. Miller is not produced as a witness and Martz, the owner, denies having received a cent although he admits having signed a receipt for $3,000. The purchase is claimed to have been made in cash rather than by check. Paying in cash is the favorite device of those who wish to conceal the details of a transaction, because paying by check leaves tell-tale pen marks. The whole story of plaintiff's purchase does not have the ring of truth."

Martz testified and admitted that his signature was on the receipt that Miller obtained from him, but stated that he did not realize what he was signing since National Builders would sometimes bring him several papers to sign which he wouldn't read because he obtained all his supplies from National Builders and trusted it completely. Martz. also testified that when he found out that the tractor was no longer on the National Builders' lot he endeavored to find out its whereabouts and was informed that someone in Alaska had purchased it.

Mrs. Kroblen, defendant's witness, testified that plaintiff called on the telephone and she informed him defendant had a lien on the tractor.

. Plaintiff contends that the conditional sales contract was discharged when Martz gave a chattel mortgage to defendant. While we do not believe this question is controlling, we disagree with plaintiff's contention. The record establishes that it was understood between defendant and Martz that the title was to be returned to defendant before there would be a discharge of the conditional sales contract and that Martz repeatedly endeavored to secure the title. Defendant guaranteed payment of both the contract and the chattel mortgage and paid same off when Martz defaulted.

Plaintiff has been in the business of buying and selling motor vehicles since 1930. Plaintiff testified that he knew the title to the tractor was in Martz. We agree with the trial court that plaintiff "must have been very familiar with the statutes of the State requiring the indorsement and assignment of the title by the owner as a requisite of a valid purchase and sale; and yet he did no such thing."

We have repeatedly held that transfer of title of an automobile cannot be effected without compliance with the statute. See *Drettmann* v. *Marchand,* 337 Mich 1, and *Bayer* v. *Jackson City Bank & Trust Co.,* 335 Mich 99.

Plaintiff did not have a general interest or ownership, or a special interest or ownership, giving the right to possession against defendant who held a prior valid conditional sales contract, chattel mortgage, and note, executed by the person in whom title existed.

The record sustains the trial court's statement: "Plaintiff has failed to prove that he bought the tractor; but that even if he did, the purchase was void because of noncompliance with the law."

Affirmed. Costs to appellee.

DETHMERS, C. J., and CARR, SMITH, BLACK, EDWARDS, KAVANAGH, and SOURIS, JJ., concurred.