Elizabeth A. DODSON and Edward L. Dodson, Plaintiffs-Appellees,

v.

IMPERIAL MOTORS, INC., a Michigan Corporation, Defendant-Appellant,

and

Stewart R. DeVries, Defendant-Appellee.

No. 14384.

United States Court of Appeals Sixth Circuit.

Oct. 23, 1961.

David O. Haughey, Grand Rapids, Mich. (Clifford A. Mitts, Mitts, Smith, Haughey & Packard, McKay Rapids, Mich., on the brief), for Imperial Motors, Inc.

Jack R. Clary, Grand Rapids, Mich. (Harold S. Sawyer, Warner, Norcross & Judd, Grand Rapids, Mich., Russell W. Conroy, Battle Creek, Mich., on the brief), for Elizabeth A. Dodson and Edward L. Dodson.

Douglas W. Hillman, Grand Rapids, Mich. (Luyendyk, Hainer, Hillman, Karr & Dutcher, Grand Rapids, Mich., on the brief), for Stewart R. DeVries.

Before MILLER, Chief Judge, and CECIL and O'SULLIVAN, Circuit Judges.

O'SULLIVAN, Circuit Judge.

Plaintiffs-appellees, Elizabeth Dodson and her husband, Edward, brought this action in the United States District Court for the Western District of Michigan to recover damages for personal injuries sustained by Elizabeth Dodson when she was struck by a DeSoto automobile driven by defendant, Stewart DeVries. DeVries, Imperial Motors, Inc., and United Insurance Company were joined as parties defendant. The case was tried before a jury. The tort occurred in Grand Rapids, Michigan. Federal jurisdiction arose from diversity of citizenship. Michigan law is applicable to the questions here involved.

It was conceded that defendant DeVries was guilty of actionable negligence and that Elizabeth Dodson was free of contributory negligence. Issue was joined upon plaintiffs' claims that Imperial was the owner of the DeSoto automobile driven by DeVries and that DeVries was acting within the scope of his employment by United at the time of the accident. After denial of motions for direction by Imperial and United, these issues and the assessment of damages were submitted to the jury. A verdict was returned for Edward Dodson in the sum of $1,037 and for Elizabeth Dodson in the sum of $20,000 against Imperial Motors. Verdicts of no cause for action were returned for defendants DeVries and the United Insurance Company. Since, however, liability of DeVries had been admitted, and the jury so instructed, judgment was entered against both DeVries and Imperial Motors. Imperial Motors' motion for judgment notwithstanding the verdict or, in the alternative, for a new trial, was denied. Imperial prosecutes this appeal.

Liability, if any, of Imperial arose from a Michigan statute which renders the owner of a motor vehicle liable for the tortious conduct of the driver thereof, if, at the time of the tort, the vehicle was being driven with the knowledge and consent of such owner. (Mich.Stat.Anno. Sec. 9.2101, C.L.1948, Sec. 257.401.) DeVries was so driving the vehicle in question and the principal question here ·involved is whether Imperial was its owner at the time of the tort. On Novem-

ber 23, 1956, the day of the accident, defendant DeVries made a deal with Imperial to purchase from it a new Plymouth automobile. In payment therefor he transferred to Imperial the DeSoto automobile owned by him and gave his check on account of the balance of the purchase price. Delivery of the new Plymouth was made to DeVries shortly after the accident and the point of dispute is whether *prior thereto* Imperial had become the owner of the DeSoto. Imperial charges that it did not, asserting that the contract of sale and purchase had not been accepted prior to the accident and that title to the DeSoto had not yet been transferred to Imperial with the formality required by the applicable Michigan statute (M.S.A. Sec. 9.1933, C.L.1948, Sec. 257.233). The district judge submitted to the jury the factual question as to whether the deal had been accepted prior to the accident and no complaint is made of the propriety of the submission of this question. The charged fatal vice in the transfer of certificate of title to the DeSoto is the alleged failure of DeVries to have his signature on it "sworn to before a notary public" prior to the accident.

The events of the day in question, insofar as they are undisputed, are as follows: at about ten o'clock in the forenoon DeVries went to the salesroom of Imperial and discussed the purchase of a new Plymouth automobile with one Robert Karr, a salesman for Imperial. It was tentatively decided that DeVries would purchase a new Plymouth and would trade in his own DeSoto on the deal. He then signed a purchase order for the Plymouth. The salesman Karr inspected the DeSoto and it was left in the Imperial garage. DeVries drove the new Plymouth home to show it to his wife. He returned to Imperial Motors some time between noon and 1:30 o'clock. On this occasion, he had with him the certificate of title to his DeSoto and a check for the amount of a required down payment on the Plymouth. On the back of the official certificate of title is a form, Part I, to be used for its transfer.

Blanks are provided on this form for the insertion of required information, for the signature of the transferor and for a jurat evidencing that the transfer was signed and sworn to before a notary public. The transfer form was blank when DeVries brought the certificate to Imperial. At the salesman Karr's request, he signed the form of transfer of title and delivered it to Karr. He likewise delivered the down payment check to Karr. Due to the lack or failure of memory of those who would have known whether DeVries had, at that time, "subscribed and sworn to" the title transfer before a notary public, there was uncertainty as to whether he had then done so. When admitted in evidence at the trial, the transfer of title to the DeSoto was completely filled out, showing transfer to Imperial Motors and with a jurat reciting that the transfer had been "subscribed and sworn to" by DeVries before M. A. Noorthoek, a notary public, who was an employee of Imperial.

When whatever was then done with, and about, the transfer of title to the DeSoto was concluded, the new Plymouth was not yet ready for delivery. DeVries needed a car to transact some business and with Karr's permission he took and drove away the DeSoto for such purpose. DeVries was returning to Imperial Motors about 3:30 o'clock in the afternoon when he ran into and injured the plaintiff, Elizabeth Dodson. The accident occurred across the street from Imperial Motors' showrooms. After the usual post-accident steps had been concluded, the DeSoto was taken into the Imperial Garage. The new Plymouth was then ready and DeVries drove it away. There was no evidence that anything was done relating to the title papers of either the DeSoto or the new Plymouth after the accident.

Upon the trial, DeVries and Imperial Motors were represented by different counsel. Over objection of counsel for Imperial, the district judge allowed counsel for DeVries to cross examine witnesses produced by plaintiffs and by Imperial concerning the disputed question

of title transfer and to argue to the jury in support of plaintiffs' contention that Imperial Motors should be held liable as owner of the DeSoto. The conduct of the trial cast DeVries and Imperial as adversaries on the question of such ownership. So successful were the efforts of DeVries' counsel in this regard that the jury announced its verdict as follows:

"We find: the United Insurance Company, no cause for action; Stewart DeVries, no cause for action. We find Imperial Motors as the legal owner of the automobile; likewise awarding Edward Dodson the sum of $1,037.00; to Elizabeth Dodson, the sum of $20,000.00 for compensation and pain and suffering."

After the Clerk had taken the verdict as thus rendered, the court sent the jury out without discharging them and discussed with counsel the problem presented by the surprising exoneration of the active tort-feasor, DeVries. Gratitude for such signal success in the face of conceded liability was expressed by DeVries' counsel as follows: "Defendant Stewart DeVries is very satisfied with the verdict, Your Honor." The jury was recalled and advised of their error. The trial judge directed amendment of the verdict to have DeVries, as well as Imperial, liable for the damages awarded. We recite the foregoing because appellant argues that such unusual conduct by the jury demonstrates that prejudice resulted to Imperial from allowing DeVries' counsel to carry on, before the jury, a contest between him and Imperial over ownership of the DeSoto. It appears to be recognized that conflicting interests of the respective insurers of DeVries and Imperial motivated DeVries' counsel's anxiety and effort to have Imperial found liable for DeVries' tort. Pretrial discussions indicated that if Imperial was held liable its liability insurer would be required to pay the full judgment unless its amount exceeded the limit of Imperial's coverage. DeVries' insurer would not be required to participate except to the extent that a judgment would exceed the Imperial coverage.

The questions for decision here, therefore, are the following: First, was it essential to the transfer of the DeSoto's title that DeVries, the transferor, subscribe and swear to the instrument of transfer before a notary public? Second if such notarization was essential, did the proofs present a factual question for the jury as to whether it had been accomplished prior to the accident in question? Third, was prejudicial error committed in allowing counsel for defendant DeVries to maintain an adversary position to defendant Imperial Motors and align himself with plaintiff in a united attack against defendant Imperial on the question of ownership of the DeSoto automobile?

**I.** *Was notarizing essential?* Michigan's motor vehicle code requires specified formalities to be observed in transferring the title to an automobile. Section 233 of the Code (M.S.A. Sec. 9.1933, C.L.1948, Sec. 257.233) covers the matter of transfer of title and in subsection (d) requires that as a part of such transfer,

"The owner shall endorse on the back of the certificate of title an assignment thereof with warranty of title in the form printed thereon * * * *sworn to before a notary public* or some other person authorized by law to take acknowledgments, and deliver the same to the purchaser or transferee at the time of the delivery to him of such vehicle, * * *." (Italics provided.)

No Michigan case has dealt directly with the question of whether notarizing is essential to the legal sufficiency of a transfer of title to a motor vehicle. The Supreme Court of that state, however, has consistently held that compliance with the quoted statute (M.S.A. Sec. 9.1933(d)) is essential to the transfer of ownership. Endres v. Mara-Rickenbacker Co., 243 Mich. 5, 9, 219 N.W. 719; Ittleson v. Hagan, 245 Mich. 56, 57, 222 N.W. 145; Kimber v. Eding, 262 Mich. 670, 672, 247 N.W. 777; Noorthoek v. Preferred Automobile Insurance Co., 292 Mich. 561, 567, 291 N.W. 6; Scarborough

v. Detroit Operating Co., 256 Mich. 173, 175, 239 N.W. 344; Seppala v. Neal, 323 Mich. 697, 702, 36 N.W.2d 186; Bayer v. Jackson City Bank & Trust Co., 335 Mich. 99, 105, 55 N.W.2d 746; Taylor v. Burdick, 320 Mich. 25, 31, 30 N.W.2d 418; Sroka v. Catsman Transit-Mix Concrete, Inc., 350 Mich. 672, 676, 86 N.W.2d 801; Cain v. Kroblen GMC Truck Sales, 360 Mich. 244, 248, 103 N.W.2d 353. The mentioned statute does not specifically provide that failure to comply with its provisions shall render a transfer void, but Section 239 of the Code (M.S.A. Sec. 9.1939, C.L.1948, Sec. 257.239) declares such failure to be a misdemeanor. From this, the Michigan court finds legislative intent that transactions failing to comply shall be void. Bayer v. Jackson City Bank & Trust Co., supra, 335 Mich. at page 105, 55 N.W.2d 746; Endres v. Mara-Rickenbacker Co., supra, 243 Mich. at page 8, 219 N.W. 719. The rule has been applied to a variety of factual situations. Notwithstanding a written contract of sale, a seller was held to remain the owner where certificate of title was not transferred. Ittleson v. Hagan, supra; a formal written statement of a present gift with delivery of an automobile was held ineffective as a gift inter vivos or causa mortis where the certificate was not transferred, Taylor v. Burdick, supra; a conditional sale with delivery of the vehicle was held void under like circumstances, Scarborough v. Detroit Operating Co., supra; failure to transfer the certificate rendered the seller liable as owner for a tort committed by purchaser, Seppala v. Neal, supra; where owner had traded and delivered his vehicle on a deal and had taken delivery of a new car, his failure to transfer title certificate of traded vehicle rendered him liable as owner thereof and exonerated the dealer for a tort committed by his employee who was using it, not on the dealer's business, Kimber v. Eding, supra.

In the case before us, liability for DeVries' admitted tort is sought to be cast upon Imperial solely by virtue of a Michigan statute which places responsibility upon an owner, even though, as here, such owner was not directly, or through an agent, a participant in any tortious conduct. (M.S.A. Sec. 9.2101 C.L. 1948, Sec. 257.401.) The liability so created is in derogation of common law and "must be strictly construed and we may not go beyond it to impose liability." Wieczorek v. Merskin, 308 Mich. 145, 148, 13 N.W. 2d 239, 240. The plaintiffs, relying on such statute, must establish strict compliance with the transfer statute to gain the advantage of the strict liability sought to be imposed on Imperial. The language of the transfer statute is mandatory that an owner transferor *"shall* endorse on the back of the certificate of title an assignment * * *, *sworn to before a notary public. * * *"* We are not at liberty to sever from this statute an integral part thereof and hold it a non-essential.

Plaintiffs rely on the case of Payne v. Dearborn National Casualty Co., 328 Mich. 173, 43 N.W.2d 316 for a contention that notarization is a non-essential. The decision does not support them. There, an owner agreed to sell his automobile. He delivered it and received a payment on the purchase price. He signed the assignment of certificate of title in the presence of a notary and "raised his hand and swore to the assignment." The certificate was delivered to the agent of the purchaser. The notary, however, did not sign the jurat. She was a notary of Muskegon County and doubted whether she could act in Newaygo County where the notarization took place. Michigan notaries may act in any part of the state (M.S.A. Sec. 5.1051, C.L.1948, Sec. 55.117) so that the notarizing was valid. The Supreme Court of Michigan held that the failure of the notary to affix her signature at the time of the signing and swearing did not invalidate the transfer. We do not consider the decision to hold that the signing and swearing to a transfer is a non-essential. Such, however, was the opinion of the district judge. In denying a motion for direction and in refusing to submit a question of fact as to whether the title to the DeSoto had been validly

transferred, he stated, "(w)e do not feel, despite the statute, under this record that the acknowledgment or the notarization was necessary in order to transfer title on the basis of Payne v. Dearborn National."

We hold that the burden was on plaintiffs to prove that the assignment by DeVries of the certificate of title to the DeSoto was subscribed and sworn to before a notary public prior to the accident.

■ II. *Did the proofs present a factual question as to whether notarization had been accomplished prior to the accident?* Imperial contended that plaintiffs were required, but had failed, to prove that the transfer of DeVries' title had been notarized prior to the accident. It argues here, as it did in the district court, that there were no proofs from which the jury could find the essential notarization as a matter of fact. Denied a directed verdict on such grounds, it requested the district judge to instruct the jury that notarizing of the transfer of title, prior to the accident, was necessary to hold Imperial liable as owner, and asked that the question of the time of notarization be submitted to the jury for determination as a matter of fact. Such requested instructions were denied, the district judge having ruled that notarization was not, under the circumstances, essential to the transfer of title.

The genuineness of DeVries' signature on the title transfer and that of the notary on the jurat thereto was not disputed. By Michigan statute (M.S.A. Sec. 5.1047, C.L.1948, Sec. 55.113) it is provided:

"In all the courts of this state the certificate of a notary public, under his hand and seal of office, of official acts done by him as such notary, shall be received as presumptive evidence of the facts contained in such certificate * * *."

Independent of statute, Michigan, consistent with general law, holds that a notary's certification to the acknowledgment to a deed, mortgage or other instrument raises a presumption of the truth of the facts recited in such acknowledgment. Metropolitan Lumber Co. v. McColeman, 140 Mich. 333, 103 N.W. 809; Hall v. Hall, 190 Mich. 100, 155 N.W. 695; Hourtienne v. Schnoor, 33 Mich. 274; Johnson v. Van Velsor, 43 Mich. 208, 219, 5 N.W. 265; Dikeman v. Arnold, 78 Mich. 455, 470, 44 N.W. 407; Cameron v. Culkins, 44 Mich. 531, 77 N.W. 157; Donahue v. Vosper, 189 Mich. 78, 85, 86, 155 N.W. 407; Saginaw Building & Loan Association v. Tennant, 111 Mich. 515, 516, 517, 69 N.W. 1118; Shelden v. Freeman, 116 Mich. 646, 74 N.W. 1004.

We have held that it was plaintiffs' burden to prove the pre-accident notarization of the transfer of DeVries' title. If Michigan law controls, they met this burden, initially, by introduction of the jurat certifying that on November 23, 1956, DeVries had "subscribed and sworn to" the title transfer "before" the notary and by proof that DeVries had signed such transfer prior to the accident. For the jurat's certification to be true, as the Michigan statute presumes, DeVries' signature had to have been placed thereon in the presence of (before) the notary. It is undisputed that DeVries' signature was placed on the title transfer prior to his driving away the DeSoto on the trip which ended with the accident involved. This is a diversity case, and the subject under consideration relates to burden of proof and the effect to be given to a presumption as an aid to the meeting of such burden. We believe that, under Erie R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, and for the reasons set forth by Professor Moore (5 Moore's Federal Practice, Sec 43.08, p. 1339) the law of Michigan is controlling. See also Barnett v. Aetna Life Ins. Co., 3 Cir., 1943, 139 F.2d 483, 484; Cities Service Oil Co. v. Dunlap, 308 U.S. 208, 60 S.Ct. 201, 84 L.Ed. 196.

The plaintiffs, having thus made a prima facie case of pre-accident notarization of the title transfer, the burden was cast upon Imperial to overcome such case by "a preponderance of evidence," Metro-

politan Lumber Co v. McColeman, supra [140 Mich. 333, 103 N.W. 811]; by "clear, convincing, and satisfactory proof * * *" Hall v. Hall, supra [190 Mich. 100, 155 N.W. 696]; by "cogent proof," Johnson v. Van Velsor, supra; "a plain case," Hourtienne v. Schnoor, supra.

The proofs relied upon by defendant Imperial to overcome the presumptive evidence of notarizing was given by some five witnesses, four of whom were in position to have testified positively on the subject, but were unable on the trial to recollect with certainty just what was done. The defendant DeVries had stated in a pretrial deposition that no one but the salesman Karr was present when he signed the title transfer, thus eliminating the presence of a notary. Upon the trial, he could not recall whether he swore to the signature or whether a notary was present. He stated he did not meet a person by the name of M. A. Noorthoek (a notary) on the day in question. The Imperial salesman, Karr, did not have sufficient recollection to say whether a notary was present when DeVries signed the transfer, although he said that DeVries did not swear to his signature. He merely recalled handing the signed transfer to a girl employee of Imperial. An Imperial employee, Shirley Sack, was able to say that she was present when DeVries paid over the down payment on the new car, because she recognized her initials on the receipt for such payment. She testified that the notary, Miss Noorthoek was not then present because Miss Sack only received such payments during the absence of the notary on the latter's lunch hour. The evidence was that the notary would have returned from lunch at 12:30. DeVries' evidence was, however, that the signing of the transfer took place after that hour at a time when the notary would be present. The notary had no recollection of the time or circumstance of her signing the jurat. She was unable to recall whether she had, or had not, seen or notarized the signing by DeVries. She speculated that if the signing had taken place during her lunch hour, the notariz-

ing likely took place around 3:30 in the afternoon, which would be about the time of the accident. George H. Weiss, Vice President of Imperial, testified that at about 2:00 P.M. he received the papers involved in the DeVries deal, including the latter's certificate of title to the De-Soto. He observed that the form of transfer on the back of it was signed by DeVries, but that the signature of the notary was not then on the jurat. The then absence of the notary's signature would not necessarily be proof that De-Vries had not, in fact, signed and sworn to the transfer before the notary. The notary's failure then to sign the jurat would not invalidate the title transfer. Payne v. Dearborn National Casualty Co., 328 Mich. 173, 182, 43 N.W.2d 316. There were other proofs on the subject, some tending to support and some to negate the factual assertion that the notarizing occurred prior to the accident.

Much difficulty has attended courts' efforts to classify and categorize the various presumptions that are permitted to be employed as substitutes for direct proof. Distinction has been made or attempted between presumptions which survive evidence offered to contest the fact presumed (and which may be weighed with and against other proofs) and presumptions which disappear completely when any evidence concerning the fact presumed appears. We will not attempt academic discussion of this perplexing subject.

Dealing with the presumption provided by notarial certification, the Michigan Supreme Court has several times permitted its survival to support a finding of fact of acknowledgment notwithstanding direct denial of acknowledgment and signature by the party charged therewith. Hall v. Hall, 190 Mich. 100, 155 N.W. 695; Hourtienne v. Schnoor, 33 Mich. 274; Johnson v. Van Velsor, 43 Mich. 208, 5 N.W. 265; Dikeman v. Arnold, 78 Mich. 455, 470, 44 N.W. 407; Cameron v. Culkins, 44 Mich. 531, 77 N.W. 157; Donahue v. Vosper, 189 Mich. 78, 155 N.W. 407; Shelden v. Freeman, 116 Mich. 646, 74 N.W. 1004. In most of these cases,

the notary was a witness in support of his certificate, but in Cameron v. Culkins and Shelden v. Freeman, the notary did not testify.

The latest discussion of this troublesome question by the Michigan court is found in the case of Garrigan v. LaSalle Coca-Cola Bottling Company, 362 Mich. 262, 106 N.W.2d 807. There, the court was dealing with a Michigan statute which creates a rebuttable presumption of negligence against the driver of a motor vehicle which strikes another from the rear (M.S.A. Sec. 9.2102, C.L.1948, Sec. 257.403) Evidence was offered of the facts and circumstances of the accident, and the question for decision was whether the statutory presumption remained to be considered by the jury along with such evidence. In holding that the trial judge had erred in eliminating the presumption, the majority of the Michigan court said:

"When the trial court undertakes to eliminate a statutory presumption as a matter of law from the jury's consideration, at the very least there must be *clear, positive and credible evidence opposing the presumption.*" 362 Mich. at page 264, 106 N.W.2d at page 808. (Italics provided.)

After detailing some of the evidence, the Michigan court went on to say:

"In any event, this record does not present such clear, positive and credible presumption-rebutting evidence that would justify elimination of the presumption by the trial court as a matter of law. Defendant was entitled to have its defense considered in the jury room, distinguished from the courtroom, in the light of such statutory presumption. The jury should have been instructed to apply the presumption unless it found from the evidence that the presumption had been rebutted."

We conclude that the evidence offered to rebut the prima facie case of timely notarizing arising from the statutory presumption and from the proof of the time of signing the assignment by DeVries did not, as a matter of law, over-

come it. We, however, are of the opinion that defendant's opposing proofs were sufficient to require the submission of the factual question to the jury. The weight to be given to the testimony of the witnesses Karr, Weiss, Noorthoek and DeVries, as well as their credibility, was for the jury. Dickerson v. Shepard Warner Elevator Co., 6 Cir., 1961, 287 F.2d 255; Lovas v. General Motors Corp., 6 Cir., 1954, 212 F.2d 805. The conflict, if any, between DeVries' testimony in court and in his pretrial deposition was, likewise, a matter to be resolved by the jury. Dickerson v. Shepard Warner Elevator Co., supra. Resolution of this factual question should, under appropriate instructions, have been submitted to the jury.

III. *Were DeVries and Imperial adverse parties?* Imperial charges that. over objection, plaintiff and appellant's co-defendant DeVries were allowed to carry on a united attack upon Imperial for the purpose of keeping Imperial in as the responsible owner of the vehicle with which DeVries committed the tort. Preliminarily, we observe that we should probably deny consideration of this claim for failure of appellant to set forth in its appendix events of the trial which it claims would portray some erroneous ruling by the district judge in this regard. Review of the transcript discloses that appellant's counsel objected to the court's allowing plaintiffs to call defendant DeVries for cross-examination as an adverse party to plaintiffs and to cross-examine him on the question of ownership of the DeSoto. Because DeVries had admitted liability, appellant contends that DeVries was not an adverse party to plaintiffs or to defendant Imperial on this issue. It does appear that DeVries' counsel's primary participation in the trial was his effort to establish Imperial as the owner of the DeSoto. Appellant avers that DeVries' counsel was permitted to argue to the jury in support of plaintiffs' claim that Imperial was such owner. Argument of DeVries' counsel in this regard, if any, is not contained in the transcript, nor do we find any record of appellant's

objection to such conduct, if such an objection was, in fact, made. Under such circumstances, it is indeed difficult for this court to appraise the appellant's claim of prejudice.

We may assume that plaintiffs and defendant DeVries had joint motivation for retaining Imperial as a party liable. The profession is aware of the desire of plaintiffs' counsel in personal injury cases, tried to a jury, to have as defendants corporations whose assumed worth and likely insurance coverage frequently provide larger verdicts than in cases where there is an individual defendant of apparently modest means and with small insurance coverage. Plausibly, appellant's counsel suggest the unlikelihood of the jury awarding $21,037 damages if DeVries was the sole responsible defendant.

Certainly the joint efforts of counsel for plaintiffs and DeVries in this regard met with dramatic success. Although DeVries was the admitted wrongdoer, the jury's verdict exonerated DeVries and cast the entire burden of damages upon Imperial. After it had fixed the amount of damages that it concluded Imperial should pay and exonerated DeVries, the district judge advised the jury that the verdict would be entered so as to include DeVries as a guilty defendant.

Inasmuch as a new trial will be had, at which such a procedural novelty is not likely to reoccur, we find it unnecessary to determine whether a new trial should have been granted because of the foregoing. The district judge's view of the propriety of the contest carried on between plaintiffs and DeVries on the one hand and defendant Imperial on the other is expressed in his opinion denying Imperial's motion for a new trial, as follows:

"The court is entitled to go behind the pleadings and to determine the actual relationship between the real parties in interest in the case, which are the several insurance companies involved.

"Under those circumstances, certainly there were adverse interests as between the several defendants."

In regard to the above, we express our view that unless unavoidable, the course of a trial should not be permitted to be cast into a certain pattern or appearance to serve, or because of, interests not defined in the pleadings and by law forbidden to be disclosed to or considered by the jury. Under Michigan law, an insurer of a litigant in a personal injury case may not be joined as a party defendant, nor may any reference be made to the fact of such insurance. (M.S.A. Sec. 24.13030, C.L.1948, 500.-3030).

Judgment is reversed and a new trial ordered.